## JOHN HANEY *vs.* WILLIAM M. MARSHALL.

A plaintiff residing in Maryland, after institution of suit sold out his farming utensils and furniture, went to Virginia, and for three or four years prior to the *trial* of his case was stationed there as an *itinerant* preacher by the conference of the religious society to which he belonged. This conference had authority to assign him any place they saw fit within their limits, which included part of Virginia and part of Maryland. He said he lived in Virginia, and had been living there for three or four years, having occasionally visited his children whom he left in Maryland. There was no proof of any declaration, either at the time of leaving or since, of an intention to retain a residence in Maryland, or to resume it at any future time. HELD:

That this plaintiff was within the provisions of the 9th sec. of the act of 1801, ch. 74, in regard to a *removal* out of the State *after the institution* of suit, and may be required to give security for costs.

The trial count, mentioned in that act, means *any court* at which the case is ready for *trial* and called for that purpose.

This act having been in operation for more than half a century, and during all that time recognised by both bench and bar as a valid law, this court is not disposed now to declare it unconstitutional, as in violation of the 2nd sec. of the 4th art. of the constitution of the United States.

A deed conveying lands in another State defectively acknowledged according to the laws of Maryland, is not admissible in evidence in the courts of this State, without proof that it was properly acknowledged according to the laws of the State where the land is situated.

The laws of the State where the land lies must govern the courts of this State in determining the validity and operation of such a deed, but in the absence of proof of such laws our courts must decide these questions according to the laws of Maryland.

Where the party offering such a deed simply states his intention to offer further proof showing that the grantee had *accepted* it, it is error in the court to decide that the deed was competent evidence to go to the jury before any proof of such acceptance had been offered, and without instructing them what should be the effect of proving, or failing to prove, such acceptance.

Where objection is made to a written instrument, *prima facie* proof of its execution must be shown to the court, and the instrument then goes to the jury; but if the preliminary proof is doubtful, the court may allow it to go to the jury with such proof, instructing them, at the same time, that if they believe the proof of execution they may receive it as evidence, otherwise they must reject it.

Evidence which, *per se*, is irrelevant, may be admitted when accompanied with an assurance that further proof will be offered showing its relevancy, but this principle does not apply to a case where a written instrument is offered and objection is made for want of proof of its execution.

A deed conveying lands in another State, signed and sealed by the grantor, and conveying the same lands which had been conveyed to him by another deed, is evidence to show his *acceptance* of such other deed, though it be defectively acknowledged according to Maryland law, and there is no proof that it was properly acknowledged according to the laws of the State where the land lies.

Such deed, inasmuch as it purports to convey the same land, may be considered as *evidence* on which an *inference* of the acceptance of the other deed may be based, in the absence of proof rebutting such an inference, but it is going too far to say it is an *admission* of such acceptance.

This court cannot refuse to reverse on account of no injury having been done by a prayer erroneously granted or rejected, unless the record *clearly* shows the *absence* of such *injury.*

Where a correct and an incorrect instruction have been given on the *same subject*, it cannot be shown that no injury resulted, because it cannot be ascertained by *which* the jury were governed.

A prayer that there is no evidence that "the acceptance" of a deed was occasioned by fraud, &c., is erroneous, because it *assumes* the acceptance of the deed.

APPEAL from the Circuit Court for Washington county.

This was an action of *covenant*, brought by the appellant against the appellee, for an alleged breach of an agreement to convey to the plaintiff three hundred and twenty acres of land in Missouri, and this is the *third* appeal in the case, the two former being reported in 9 *Gill*, 251, and 4 *Md. Rep.*, 498. The pleadings are the same as in the last appeal.

*1st Exception.* When the case was called for trial, at the July term 1854 of the court below, the defendant moved for a rule upon the plaintiff to give security for costs, upon the ground that he was a resident of Virginia, and had left this State since the institution of this action. Proof was then taken in regard to the residence of the plaintiff, which is sufficiently stated in the opinion of this court. Upon this evidence the plaintiff resisted the application, insisting, that the facts proved did not show that Haney was a non-resident, and, even if they did, that it is now too late under the act of Assembly to impose the rule. But the court, (PERRY, J.,) decided that the application was not too late, and that the facts proved Haney to be a non-resident, and laid the rule accordingly. To this ruling the plaintiff excepted. The plaintiff then gave the security, and the case was continued to the next term.

*2nd Exception.* The plaintiff offered in evidence the agreement made between the parties, dated the 23rd of December 1841, and proved compliance on his part with the stipulations thereof, and there rested his case. The defendant then offered to read in evidence a deed from himself and wife to the plaintiff, dated the 14th of September 1844, for certain lands described as situate in Clarke county, Missouri. This deed was acknowledged by the grantors before the *clerk* of Washington county court. At the time of this offer defendant stated he intended to offer further testimony showing that the plaintiff had accepted this deed under the covenant. To the reading of this deed, and its admissibility as offered, the plaintiff objected, upon the ground that it was not duly and properly acknowledged according to the laws of Maryland, and before being admitted as evidence should be shown to be a good deed and properly acknowledged according to the laws of Missouri. But the

Haney *vs.* Marshall.

court overruled this objection, and was of opinion that the deed was competent evidence to go to the jury. To this ruling and opinion the plaintiff excepted.

*3rd & 4th Exceptions.* In these exceptions the plaintiff objected to the admissibility of two deeds, from Zellers and Rench to Marshall, both conveying lands in Missouri, and both acknowledged before the *clerk* of Washington county court. The court overruled the objections and permitted the deeds to go to the jury, and to these rulings the plaintiff excepted.

*5th Exception.* The defendant then, for the purpose of showing the acceptance by Haney of the deed from Marshall to him, offered to read a deed from Haney and wife to Chaney, dated the 12th of March 1845, the signing and sealing of which was admitted, for the same lands described in the deed from Marshall to Haney. This deed also was acknowledged before the *clerk* of Washington county court. To its admissibility the plaintiff objected, but the court overruled the objection and permitted it to go to the jury, and to this ruling the plaintiff excepted.

*6th & 7th Exceptions.* (These exceptions, taken to the admissibility of evidence tending to show the value of the Missouri lands at the time of the breach of the covenant, were abandoned by the appellant.)

*8th Exception.* The plaintiff then, to rebut the testimony of the defendant, offered to read a patent from the United States to Creath Neale, dated the 30th of August 1838, for certain land in Missouri, and to show that part of the land mentioned in the contract sued on, were not taken up by Rench and Zellers, as stated therein, and that the deed from Marshall to Haney was not in performance of the contract, and that part of the land purporting to be conveyed by the deed from Rench to Marshall, and by the latter to Haney, was embraced in this patent, and that Marshall had, in fact, no title to such part so purported to be conveyed; and for the purpose of showing fraud or misrepresentation on the part of Marshall, or mistake on the part of Haney in accepting the deed from Marshall and wife to him. The plaintiff's counsel,

at the time of this offer, stated and assured the court that this patent would be followed up by further and other facts, though not relating to the patent, showing and tending to establish fraud or misrepresentation on the part of Marshall in the making and delivery of the deed from himself and wife to Haney, or mistake on the part of Haney in the acceptance thereof. To the admissibility of this patent so offered the defendant objected, and the court sustained the objection, and ruled that such patent was not admissible and competent testimony in the cause. To this ruling the plaintiff excepted.

*9th Exception.* The plaintiff then offered proof on the subject of fraud or misrepresentation on the part of Marshall, and mistake on the part of Haney in accepting the deed from Marshall to him. It is not deemed necessary to state this proof at length, but simply to say that it differs in some respects from that offered on the former appeals. The plaintiff then upon the whole testimony offered the following prayers:

1st. If the jury believe from the evidence that the parties entered into the agreement of the 23rd of December 1841, that Marshall and wife executed to Haney the deed of the 14th of September 1844 for lands purchased from Rench and Zellers, and lying in Clarke county, Missouri, that Haney and wife executed to Chaney the deed of the 12th of March 1845 for the same lands, conveyed as aforesaid by Marshall and wife to Haney, and that Haney accepted the said deed to him from Marshall and wife, then that the acceptance of the said deed was, in the absence of fraud or misrepresentation of Marshall, or mistake on the part of Haney, a full discharge of Marshall's covenant to convey, and that the execution of the deed by Haney and wife to Chaney, is a conclusive admission of his acceptance of the deed from Marshall and wife.

2nd. This prayer is the same as the preceding, except that it asserts that the execution of the deed by Haney and wife to Chaney, is "an admission" of his acceptance of the deed from Marshall and wife.

3rd. That there is no evidence in this cause from which the jury can find that the acceptance of the deed from Marshall and wife, by the said Haney, was occasioned by the fraud or misrepresentation of Marshall.

4th. That there is no evidence in this cause from which the jury can find that the acceptance by the said Haney was occasioned by mistake, such as would avoid the said acceptance.

The court rejected the first prayer and granted the last three, and instead or lieu of the first prayer the court instructed the jury, that the acceptance of the deed from Haney to Chaney, does not operate as an estoppel upon said Haney to dispute the acceptance of the deed from Marshall and wife to said Haney, but the jury can consider the said deed from Haney to Chaney as evidence of the acceptance of the deed from Marshall and wife to Haney.

The plaintiff excepted to the granting of the said three prayers, and the verdict and judgment being against him, appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Thomas Harbine* and *Richard H. Alvey* for the appellant, argued:

1st. It is contended, that the facts constituting the ground for the rule laid by the court in the first exception, did not show that the plaintiff had left Maryland and gone to Virginia for the purpose of taking up his *permanent residence there,* or that he had any intention of abandoning his original domicil in Maryland for one elsewhere. And until he has a fixed intention of abandoning his original domicil, and does, in pursuance of such intention, leave his original place of residence and actually acquires a new residence elsewhere, with an intention of remaining at it for an indefinite period, the original residence or place of abode is to be regarded as his legal domicil. The original domicil is to prevail until the party has actually acquired another, with an intention of making the latter his sole domicil. And the new domicil must be actually acquired *facto et animo.* (*Story's Con. of Laws,* secs. 41 to 49. 5 *Md. Rep.,* 186, *Ringgold vs. Barley.* 5 *H. & J.,* 86. *Baptiste vs. Volunbrun.* 9 *G. & J.,* 198, *Cross vs. Black.* 5 *Ves.,* 780, 785, *Somerville vs. Somerville.* 5

*Pick.*, 370, *Harvard College vs. Gore.* 10 *Do.*, 77, *Jennison vs. Hapgood.* 2 *Bos. & Pul.*, 228, *Bruce vs. Bruce.* 7 *Cranch*, 506, *Livingston vs. Md. Ins. Co.)* Domicil is defined to be a residence in a country, *with the intention,* either tacitly or expressly declared, of making *it a permanent place of abode.* (8 *Cranch,* 278, *The Venus.*) In this case it cannot be said of Haney that he went to Virginia for the purpose of taking up his permanent residence there. Being an itinerant preacher in a church whose conferences govern him, and the appointments of which he is bound to obey, and having no option in the selection of his station or circuit of ministerial duty, and being assigned to one location for a period not longer than a year, subject in the meantime to be transferred to another different location, according to the discretion of his ministerial superiors, he could not, consistently with his duty, go to any place with a purpose of making it *his permanent residence or abode,* and *with an intention* of remaining at it for an *indefinite period.* It is well established law that a residence in a place to produce a change of domicil must be voluntary, and that a person who is under the power and authority of another possesses no right to choose a domicil. *(Story's Conf. of Laws, secs.* 46, 47. *Leiber's Ency. Amer., Domicil.)* Haney in fact had been, and was at the time of this rule laid, but a mere sojourner in Virginia for a temporary ministerial purpose, and with no intention of making a permanent residence there, and no expressed intention in regard to his residence has been proved in the case. It was proved that he had a permanent residence in Maryland before he was sent to Virginia in discharge of his ministerial duties, and, as we contend, his domicil in Maryland remained at the time of laying this rule.

But suppose Haney had lost his domicil in Maryland, still we contend the rule ought not to have been laid, as the trial count, contemplated by the act of 1801, ch. 74, sec. 9, had long passed before the rule was asked for. This act, authorising the laying of such rules, being in derogation of the common law right of instituting and maintaining suits in the courts of the country, and grossly violative of good comity among the

Haney *vs.* Marshall.

States of the Union, should be most strictly construed, and, by a strict construction, the terms "at or before the trial court," would mean the regular trial court or term as fixed by law, which is the second term after suit brought. If this is not the construction of the act, it is in the power of a defendant, at any time and after the longest delay, to surprise the plaintiff and take the advantage of a time when perhaps he would be least able to comply, to impose the rule on him, and that too at the last moment, and after all the trouble and expense have been incurred in preparing for trial. A rule of such hardship and of such doubtful propriety should have some limitation and restriction imposed upon it. And the party who takes advantage of it should be compelled to do so in due time, and so as not to violate either fair dealing towards the plaintiff or the acts of Assembly made to expedite the trial of cases.

Again, this section of the act of 1801, under which this rule was laid, is of very doubtful constitutional validity, for, by a very obvious mode of reasoning, it would seem to be in violation of the second section of the 4th Art. of the constitution of the United States, which declares that citizens of each State are entitled to all *the privileges and immunities* of citizens in the several States. Certainly no privilege is more valuable to the citizens of the several States, than the unquestioned and unconditional right to sue and maintain actions in the courts of the country. 4 *Wash. C. C. Rep.*, 371, *Corfield vs. Coryell.*

2nd. The questions arising upon the 2nd, 3rd, 4th and 5th exceptions, relate to the admissibility of the deeds offered in evidence by the defendant. Whether these deeds were admissible or not for the reasons assigned, is wholly immaterial, if inadmissible on any ground they should have been rejected, the objection being to their admissibility. (3 *G. & J.*, 435, *Sothoron vs. Weems.*) These deeds purported to convey lands in Missouri, and were acknowledged before the clerk of Washington county court, and were, therefore, clearly void as legal conveyances of real estate in Maryland. There was no proof in the case that such acknowledgment was in accordance with the laws of Missouri, and, in the absence of such proof, the law of Maryland must govern and its requisites be complied

with. (1 *H. & J.*, 710, *Harper vs. Hampton.* 3 *G. & J.*, 242, *Trasher vs. Everhart.* 7 *Gill*, 394, *Gardner vs. Lewis.* 9 *Gill*, 1, *Dakin vs. Pomeroy.* 3 *Md. Rep.*, 13, *Green & Trammell, vs. Trieber.*) It was incumbent on the defendant to show that the deeds were good under the laws of Missouri, and, in the absence of any proof on the subject, the sufficiency of the deed, in the second exception, to work the satisfaction contemplated by the accord is to be determined by the laws of Maryland. The evidence as to what the foreign law is, always goes, in the first instance, to the court, and if it be clear and uncontradicted, the court may decide what it is, but if it be doubtful, the court should instruct the jury that the deed was or was not admissible, according as they should or not believe the law as attempted to be proved, exists. (3 *G. & J.*, 243.) But here the deed *was* admitted as evidence, without any proof at all, and without any instruction from the court that the jury should reject it, unless followed up by proof of what the law of Missouri was, or by proof of its acceptance by Haney in discharge of the covenant.

To the deed offered in the second exception there are various other objections. There is no proof of its *delivery* and *acceptance*, nor that it was delivered and accepted in discharge of *the* covenant in the agreement sued on, which was a distinct question and one exclusively for the jury, and for them to find or not from facts and proof in the case. It was not admissible under the *pleadings.* By the agreement in suit Marshall expressly *covenants* to convey to Haney the land in fee-simple, clear of all incumbrances, and this entitles him to receive a valid deed with all the usual covenants in it, and an express covenant against incumbrances. (15 *Ves.*, 258, *Church vs. Brown. Platt on Cov.*, 383, 384.) The usual covenants are, that the vendor is seized and has power to convey in fee, for quiet enjoyment, that the estate is free of incumbrances, and for further assurance. Now this deed has but two covenants, the one of general warranty and the other for further assurance. It was not, therefore, the deed Haney was entitled to, but of a different character, and of less legal security and worth to him, and not being made until long after breach of the cove-

nant accrued, could have been received as evidence under no other state of pleading than under the plea of *accord and satisfaction,* and then it was incumbent on the defendant to show there had been actual satisfaction, and that it was reasonable. 1 *H. & J.,* 675, *Harper vs. Hampton.* 1 *Ch. Pl.,* 487, 488. 1 *Taunt.,* 428. 1 *Saund. Pl. & Ev.,* 24, 34 to 37. The two deeds in the 3rd and 4th exceptions are also objectionable, as not being in any way pertinent to the issue. They have nothing to do with the case; for the court, on the former appeals, have decided that it matters not where the lands conveyed by Marshall to Haney *came from,* if he accepted the deed for them. These deeds, therefore, as against Haney are *res inter alios,* and should have been rejected. 4 *Pick.,* 108, *Jacobs vs. Putnam.*

The admissibility of the deeds contained in these several exceptions was never objected to before, and none of the questions now raised have ever been decided by the opinions delivered upon the former appeals. They are entirely new questions, now raised for the first time.

3rd. If the judgment should be reversed on the second, we do not press for a decision on the 8th exception. If, however, it be necessary to decide this exception, we say the patent to Neale was admissible:—1st. As *rebutting* evidence, it including part of the land described in Marshall's deed to Haney as having been purchased from the government by Rench and Zellers. (7 *Gill,* 1, *Garner vs. Smith.* 1 *Md. Rep.,* 14, *Milburn vs. The State.*) 2nd. One of the issues made by the pleadings, was the right of the plaintiff to take possession of the land on or before the 1st of April 1842, and the patent was pertinent to this issue, as it shows that at that time part of this land was in *possession of Neale,* and even under the plea of *accord and satisfaction* this patent was evidence of want of satisfaction, for it shows that the consideration of the accord had failed. 3rd. Marshall was bound to make Haney a good and operative conveyance, not in form only, but which would carry a good and sufficient title to the land proposed to be conveyed. (2 *Johns.,* 612, *Clute vs. Robinson.* 10 *Do.,* 266, *Jones vs. Gardner.* 4 *Paige,* 628, *Everson vs. Kirtland.*)

Now if Haney accepted Marshall's deed, supposing he owned the land he professed to convey, this patent showing that he did not own part of such land, it was Haney's right on discovering this to repudiate the deed, and rely upon his original covenant for a good conveyance. (1 *Esp.*, 150, *Chambers vs. Griffith.* 2 *Do.*, 639, 640, *Farrer vs. Nightingal.* 11 *Johns.*, 525, *Judson vs. Wass.*) Haney could not sue upon the warranty in Marshall's deed except upon *eviction*, and as to what constitutes eviction, see 5 *Hill*, 599. 5 *Johns.*, 120, *Kortz vs. Carpenter.* 10 *Wheat.*, 449, *Day vs. Chism.* In this view, therefore, the patent was admissible. 4th. Upon the question of fraud and misrepresentation of Marshall in the making and delivery of the deed to Haney, and mistake on the part of Haney in accepting it, this patent was strong evidence. And even if but slight evidence only upon the questions of fraud and misrepresentation, it should have been permitted to go to the jury, (5 *G. & J.*, 304, *Davis vs. Calvert.* 1 *Md. Rep.*, 474, *Waters vs. Dashiell.* 4 *Paige*, 628, *Everson vs. Kirtland,*) and especially should it have been admitted, when the court was assured it would be followed by other facts and circumstances tending to prove fraud or misrepresentation.

4th. The 9th exception was taken to the granting of the three prayers, Nos. 2, 3 and 4, offered by defendant, and not to the instruction of the court. The prayer No. 2 is vicious, in referring to the finding of the jury the execution of the agreement sued on, which was *admitted* by the *pleadings* in the case. The jury could not find any thing against that which the parties affirmed and admitted of record, even though the truth be the contrary. (*Buller's N. P.*, 298.) But again, by this instruction the court told the jury the deed from Haney to Chaney, was *an admission* by Haney of his acceptance of the deed from Marshall, and in the substituted instruction the court says it was *but evidence* of the fact of acceptance to be considered by the jury. If it was but a fact in the case, as it doubtless was, and to be considered as mere evidence by the jury, then the court had nothing to do with the conclusion, however irresistible, that might follow the consideration of such evidence. But, by granting the 3rd and 4th prayers,

the court assumed it as a fact *incontrovertible* that Haney had accepted the deed from Marshall, which was utterly inconsistent with the principle of its own instruction.

The third and fourth prayers withdrew from the jury all questions or consideration of fraud or misrepresentation on the part of Marshall, and mistake on the part of Haney in the delivery and acceptance of this deed, upon the assumption that there was no testimony in the cause legally sufficient to be considered by them. The question raised by these instructions is, whether, from all the facts and circumstances in the case, to be considered together, a rational, sane mind, *could draw* the conclusions sought to be proved by them? for if so, then their legal sufficiency is established, and the whole matter should have been referred to the jury, who were the only judges of its sufficiency in *point of fact*. And whether the testimony thus referred be weak or strong, conclusive or inconclusive, sufficient or insufficient, to prove the facts or warrant the inferences, were matters for the exclusive cognisance of the jury. (*7 G. & J.,* 40, *Cole vs. Hebb.  2 H. & G.,* 182, *Ferguson vs. Tucker.*) Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case.  (*2 H. & J.,* 285, *Brogden vs. Walker.*) In determining on the questions of fraud, misrepresentation or mistake, we must look to the character of the contract, the nature of the deed, the situation and conduct of the parties, the condition and situation of the property, and every thing else that can be legally considered; and we must suppose each party was actuated by the ordinary principles which prompt men to take care of and promote their own individual interest. Marshall was bound to observe the most perfect good faith in the whole transaction, and if he has not acted perfectly honest and fair, or has done any thing to deceive Haney or to lure him into the acceptance, it is at once rendered void, and does not in any way bind Haney or release Marshall.  (*3 Story's Rep.,* 700, *Doggett vs. Emerson.*  1 *Do.,* 172, *Daniel vs. Mitchell.*  3 *Cranch,* 270, *McFerran vs. Taylor.*  1 *Wood. & Minot,* 342, *Mason vs. Crosby.*  4 *Paige,* 628, *Everson vs. Kirtland.  Bouv. Law Dic.,* title

*Fraud, sec.* 3.) From all the facts and circumstances proved in this case, some of which are new and different from those in the former appeals, it is hard to perceive how any rational, sane mind, could resist the conclusion that Marshall had not only acted deceptively, but had practised the grossest fraud upon Haney, and that Haney, if he did actually accept the deed from Marshall, did so under a mistake.

*J. Dixon Roman* for the appellee, argued:

1st. The act of 1801, ch. 74, sec. 9, is a remedial statute, and is to be liberally construed. It is not confined to *non-residents,* but applies also to those who remove beyond the limits of the State after suit brought against them. With this construction of the act, it is clear from the facts proved that Haney was a proper subject for its application. Nor was the application too late; for the words of the act are, that it may be made "at or before the *trial court;*" that is, at or before any court at which the case is *tried.* The case of *Whittington vs. Polk,* decides that the act in question is constitutional. But again, the ruling of the court upon this point is not a matter from which an appeal will lie;—it was a mere incidental question, decided by the court in the course of the trial. But even if it were the subject of an exception and appeal, the plaintiff, by entering into the security and proceeding with the trial of the case, has *waived* his exception on this point. 7 *G. & J.,* 494, *Nesbitt vs. Dallam.*

2nd. The court properly admitted the deed in the *second exception.* As to its acknowledgment, there is no law of this State in reference to the mode of conveying lands in Missouri. How then can this court decide the question upon Maryland law? It was for the other side to show that the acknowledgment was *not* according to the laws of Missouri. But the offer of the deed was accompanied with the offer to follow it up with proof that the plaintiff had *accepted* this deed under the covenant, and this removes the whole difficulty on the subject. It was the very point decided in the former appeals in this very case in 9 *Gill,* and 4 *Md. Rep.* The *acceptance* of this deed shuts out all inquiry by parol as to the quantity or

description of the land conveyed, and all questions as to the validity of its acknowledgment. 3 *Johns.*, 506, *Howes vs. Barker.* 10 *Johns.*, 298, *Houghtaling vs. Lewis.* But again, the plaintiff has his remedy upon the covenant in the deed for *further assurance.* The plea sets out the covenants in the deed, and avers that it was *accepted* in discharge of the covenant to convey, and having sustained this plea, the action on this covenant is barred.

3rd. The same argument applies to the deeds offered in the 3rd, 4th and 5th exceptions. See also on this point the case of *Byers vs. McClanahan*, 6 *G. & J.*, 250.

4th. That the fact of there being an outstanding title in Creath Neale, as stated in the 8th exception, cannot prove *fraud* in Marshall, for he had good deeds from Rench and Zellers for the whole land with *covenants of seizin.* The *isolated* fact of this patent, unconnected with *any other fact,* cannot prove *fraud,* or tend to *prove* it.

5th. The legal questions presented by the prayers in the 9th exception, are substantially the same as those presented by the record in the former cases. The evidence on which the charge of fraud against Marshall is based, is the same with the exception of the patent to Creath Neale in the 8th exception. No better argument on these prayers can be made than that used by the court in 9 *Gill*, 259, and 4 *Md. Rep.*, 512, and to those decisions I confidently refer as *conclusive* on this question. These are, and always have been, the great and leading questions in this case, upon which its decision must rest. If these points are decided, as I think they must be, in favor of the appellee, the minor points which have been argued on this appeal, let them be decided as they may, cannot vary the result, and therefore the court would not, for error in these points, admitting that such error exists, send back the case upon a *procedendo.* 6 *G. & J.*, 386, *Hall vs. Hall.* 6 *Md. Rep.*, 142, *Key vs. Dent.*

ECCLESTON, J., delivered the opinion of this court.

On motion of the defendant a rule was laid upon the plaintiff to give security for costs, under the act of 1801, ch. 74,

sec. 9. To this ruling of the court the plaintiff excepted; now contending that he was not, when the suit was brought, a non-resident, and that he did not remove out of the State after the commencement of the suit.

The proof shows that Haney was formerly a farmer in Maryland, and a local preacher attached to the society of the United Brethren in Christ. After the decease of his wife he sold his farming utensils, and some household furniture. After which he went to Virginia, leaving his children in Maryland, living with their aunt; and for three or four years prior to the trial, in December 1854, he had been engaged, in Virginia, as an itinerant preacher, having occasionally visited his children in Maryland. The conference to which he belongs includes a part of Maryland, and also part of Virginia, but is called the Virginia conference, and since Haney has been engaged as an itinerant preacher he has been stationed, all the time, in the latter State: the conference having authority to assign him any place they might deem proper, within the limits of the conference. During the term of the court at which this case was tried, in a conversation with the witness, Keilhoffer, the plaintiff being asked where he then lived, said, in Virginia. And also said he had been living there some three or four years; that he had been lately married, and "was living some 160 miles from here;" meaning from Hagerstown in Maryland. It was shortly after the decease of his wife, and the sale of his farming utensils, he abandoned his farming operations, and made the change from a local to an itinerant preacher, knowing that by the change he would be subject to such regulations of his religious society as would give the officers thereof the authority to send him beyond the limits of Maryland, and to keep him out of the State for the residue of his life, if they saw fit to do so.

Whilst we find all these manifestations, or evidence of a removal from this State, there is no proof of any declaration, or of any intimation, either at the time of leaving or since, of an intention to retain a residence here, or to resume it at any future time.

Under these circumstances we think the plaintiff was within

the provision of the law, in regard to a *removal* out of the State after the institution of a suit.

But, in behalf of the plaintiff, it is contended, that admitting he has removed from Maryland, still the rule ought not to have been laid, because the trial court contemplated by the act of Assembly, had passed a long time before the rule was asked for ; inasmuch as that act has reference to the second term of the court, under the present law regulating the trial of causes. This we think is not the proper construction of the statute ; but the trial court alluded to means any court at which the case is ready for trial, and called for that purpose.

This interpretation will not, as has been supposed, subject the plaintiff to a non-suit, because being taken by surprize he may not be prepared to give the security. With a view of avoiding such a mischief the law authorizes the court to grant a continuance of the cause, until the next term, so as to allow the plaintiff time to comply with the rule.

Although, in consequence of the law having provided for the trial of causes at the second term, in that sense such term may be called the trial court, yet, in point of fact, the term at which the case is actually tried is really the trial court of that cause.

It was evidently the design of the act to give the defendant a right to demand security for costs, if the plaintiff should remove from the State after the institution of the suit and previous to its termination. Which design would be defeated by the plaintiff's interpretation of the law, in a case tried after the second term, if the removal should occur between that term and the trial of the cause.

Another objection to the ruling of the court is, that the 9th sec. of the act of 1801, is unconstitutional, because in violation of the 4th article and 2nd sec. of the constitution of the United States, which declares that citizens of each State are entitled to all the *privileges and immunities* of citizens in the several States. The act has been in operation for more than half a century. During all which time it has been recognized by the profession, both on the bench and at the bar, as a valid law; its constitutionality never before having been questioned,

27     v.9

and at this late day we are not disposed to declare it a nullity. In aid of the correctness of such a decision, we would refer to the 83rd, 91st, and 92nd rules of the Circuit Court of the United States for the Maryland District, in which the principle of this act is adopted. Which rules were made and established by the judges of that court, at November term 1802. *Evans' Pr.* 529, 530 & 531. From their adoption to the present time these rules have continued in operation; and at April term 1842, since the appointment of the distinguished Chief Justice Taney, the 92nd rule was extended to cases in chancery. See also what is said in *Campbell vs. Morris,* 3 *H. & McH.*, 553, &c., in regard to the second section of the fourth article of the constitution of the United States.

It appears, from the second exception, the defendant offered in evidence to the jury a deed, from himself and wife, to the plaintiff; the signing and sealing of which were admitted. At the time of offering the deed the counsel for the defendant stated to the court, they intended to offer further testimony showing that the plaintiff had accepted the deed under the covenant. To the reading of this instrument to the jury, and to the admissibility of the same as offered, the plaintiff objected, insisting, that it was not duly and properly acknowledged according to the laws of Maryland, and that before being admitted as evidence to the jury it should be shown to be a good deed, and properly acknowledged according to the laws of Missouri. But the court overruled the objection and permitted the deed to go to the jury. This decision he defendant's counsel contends is correct, because of his offer to produce evidence of the acceptance of the deed by the plaintiff; the effect of which acceptance it is said has been settled by the two former decisions in the Court of Appeals, in reference to this deed. But in neither of those decisions was the question presented which is now before us. The deed was admitted in evidence, in each instance, without objection, and its effect only considered; or rather, what was its effect if accepted by Haney. It was said by the plaintiff that the land included in the deed was not the same which the defendant, by his covenant, was bound to convey, and therefore the conveyance was no discharge of the covenant. In reply to this it was contend-

ed, that if the plaintiff accepted the deed, although it was for land, different from those described in the contract, nevertheless, such acceptance discharged the defendant from liability under the contract. But no question was raised as to whether the deed was defective, for want of a sufficient acknowledgment, to convey the lands described in it; or whether the plaintiff's acceptance would cure a defective acknowledgment.

The court say, in 9 *Gill*, 259, "A deed had been executed by Marshall to Haney, for lands in Clarke county, Missouri, and if the lands conveyed by Marshall's deed were not the identical lands named and described in the agreement between Marshall and Haney, yet, in the absence of evidence of mistake, misrepresentation or fraud, if Haney accepted this conveyance from Marshall, in discharge of this stipulation in the agreement of the 23d of December 1842, it did discharge it." The court also held, that in the absence of mistake, misrepresentation or fraud, the conveyance from Haney to Chaney, of the same lands which were conveyed from Marshall to Haney, was evidence that Haney had accepted the deed from Marshall. And these propositions are adopted in 4 *Md. Rep.*, 511, &c.

The deed under consideration, professing to convey lands lying in Missouri, was acknowledged before the clerk of Washington county court, in Maryland, and no proof was given, or proposed to be given, in regard to how deeds were required to be executed or acknowledged under the laws of Missouri. To render the instrument admissible as evidence, the party presenting it was bound to show, by *prima facie* proof, at least, that it had "all the formalities requisite to give it legal existence." 1 *Md. Rep.*, 123, *Dement vs. Stonestreet.*

We now propose, in the first instance, to consider the matter without reference to the offer to show that Haney accepted the deed ; and then to see what influence that offer ought to have on the question.

A clerk of the county court not having authority to take the acknowledgment of a deed of lands lying in Maryland, such an instrument as the one before us would not be evidence here.

And in the absence of proof in regard to the laws of Missouri, on the subject, we are to be governed by our own laws. *Harper vs. Hampton,* 1 *H. & J.,* 710. *Trasher vs. Everhart,* 3 *G. & J.,* 242. *Gardner vs. Lewis,* 7 *Gill,* 394. The last of these cases refers, with approbation, to the first, in which it is said: "As to the laws of *South Carolina* governing this question:—no doubt the laws of *South Carolina* must govern the court in determining on the validity and operation of this deed, if they are different from the laws of this State; but no proof has been adduced to prove that the laws of *South Carolina* will make this a good and valid deed, and without proof, the jury cannot find what the law of South Carolina is." Again, it is there said, "The court must decide it according to the laws of this State; and are of opinion it must be considered as a void and inoperative deed, according to the laws of *South Carolina,* as to any question arising on it in this State."

The deed, on its face, is shown to be defective and inoperative under our laws, and in the absence of proof showing what the laws of Missouri are, it was inadmissible as evidence; unless the acceptance of it by Haney could be considered as evidence of its validity under the Missouri laws. Conceding, without deciding, the acceptance should be so considered, there arises a question whether the statement of counsel, of an intention to offer further proof showing that the plaintiff had accepted the deed, will justify the action of the court in permitting it to go to the jury, as competent evidence, before any proof, whatever, in regard to such acceptance, had been produced, and without any instruction or direction to the jury, as to the light in which the deed was to be regarded by them, if they should believe the deed had not been accepted by the plaintiff. For the deed was permitted to go to the jury, as evidence, under the circumstances just alluded to.

When a written instrument is produced as evidence, and objected to, its execution is to be shown to the court, by *prima facie* proof, at least, and when that is done it is permitted to go to the jury. But if the preliminary proof is doubtful, the court may allow the jury to take the instrument with the proof

in regard to its execution, informing them that they are to receive it as evidence, if they believe it to have been executed, otherwise they must not consider it as evidence. 3 *G. & J.*, 243. 1 *Md. R.*, 123. 5 *ib.*, 418. 7 *ib.*, 45. And 1 *Greenl. on Ev.*, sec. 49.

There is a rule admitting evidence, which, *per se*, may be irrelevant, when accompanied with an assurance that further proof will be given showing its relevancy. 4 *Md. Rep.*, 510. But no case has been adduced where such a principle has been applied, when a written instrument has been offered and objected to, for want of proof of its execution.

The present deed, when offered, was the only proof of its validity, and in that condition was not admissible, unless made so by proof of its acceptance on the part of Haney. And if admitted, in consequence of the declared intention to furnish such proof, it was error in the court to overrule the plaintiff's objection, expressing the opinion, as stated in the exception, that "the deed was *competent evidence to go to the jury*," and permitting them to have it as such ; without saying any thing to them in regard to what should be the effect of proving, or a failure to prove, the acceptance of Haney. Permitting the deed thus to go to the jury as competent evidence, without any instruction as to the effect of an acceptance, was calculated to induce them to suppose the instrument was proper for their consideration, as a valid legal instrument, irrespective of the acceptance; or, at all events, to leave them in a state of uncertainty on that subject. Under such circumstances, the jury might have understood the proposed evidence of acceptance was not designed to be used as evidence, supplying the absence of other proof, that the deed had been executed according to the laws of Missouri; but considering the deed as legally executed, the proof of its acceptance was intended to sustain the plea of accord and satisfaction, by showing that in lieu of the lands described in the covenant the plaintiff had accepted a conveyance of other lands.

There having been no proof whatever of the validity of the acknowledgment, we are not to be understood as expressing any opinion in regard to whether or not the court would have

been right, if they had admitted the deed instructing the jury, at the same time, as to what should be the effect of producing, or failing to produce, the promised evidence of acceptance; but our decision is, that the acknowledgment being defective under our laws, and no proof being given to show its validity under the laws of Missouri, the court were wrong in deciding that "the deed was competent evidence to go to the jury," without instructing them what should be the effect of proving, or failing to prove, the acceptance.

The third and fourth bills of exceptions present questions relating to the admissibility of two deeds, intended to convey lands in Missouri; each of which was acknowledged before the clerk of Washington county court, in this State. What has been said in reference to the deed mentioned in the second exception is sufficient to show, that we consider the court were wrong in admitting the two deeds, mentioned in the two exceptions now under consideration.

The fifth bill of exceptions is in reference to a deed from Haney and wife to Ezekiel Chaney, for the same lands described in the conveyance from Marshall to Haney. The former was offered and admitted, for the purpose of showing the acceptance of the latter, by Haney. Want of proper acknowledgment is the ground of objection to the present deed; the acknowledgment being similar to those we have already held to be defective. But this defect does not make the instrument inadmissible as evidence, for the purpose it was designed to accomplish. Although defective as a conveyance of the lands it describes, yet, as the signing and sealing of it by Haney are admitted, and it professes to convey the same lands which are mentioned in Marshall's deed to him, this instrument, signed by him, might be used as evidence to show he had accepted the deed from Marshall.

The sixth and seventh bills of exceptions have been abandoned. And we understood the plaintiff's counsel as saying, that if the decision below, in relation to the second exception, should be reversed, he did not insist upon a decision in regard to the eighth. It is therefore unnecessary for us to express any opinion, in reference to the sixth, seventh or eighth bills of exceptions.

The second, third and fourth prayers of the defendant, which were granted by the court, present the questions arising under the ninth bill of exceptions.

The second prayer is erroneous, because it concludes by saying, if the jury believe the matters submitted for their consideration, then, "the execution of the deed by Haney and wife to Chaney is an admission of his acceptance of the deed from Marshall and wife."

The deed from Haney makes no reference to that from Marshall; but inasmuch as both deeds are for the same lands, the last might be considered as evidence on which to base an inference that the first had been accepted, in the absence of proof rebutting such an inference. It is going too far, however, to say, the execution of the last deed is an *admission* that Haney had accepted the first. And such an instruction may have operated very injuriously to the plaintiff; for the admission of a fact, by a party, is much stronger evidence against him than a mere inference of the same fact. An inference may be rebutted by circumstances in opposition to its correctness, whilst it is very difficult to convince a jury, that a man has made an admission against his interest, by mistake, or in any other mode to get rid of its influence.

The defendant's counsel insists, that even if this objection to the prayer is a valid one, when considered without reference to the instruction given in lieu of the first prayer, yet, as that instruction gave the law correctly to the jury, upon the same subject, there can be no reversal on account of the supposed error in the prayer. But as it appears the instruction and the prayer were both given, if one is correct, and the other is erroneous, how is it to be ascertained by which the jury were governed? This is not like the case where several prayers have been offered, some or all of which have been refused, and an instruction given by the court which covers the whole ground. There, although some of the prayers refused should be correct, still the rejection of them will not cause the judgment to be reversed, because the party whose prayers are refused has sustained no injury. But this court cannot refuse to reverse, on account of no injury having been done, by a prayer either erroneously

granted or rejected, unless the record clearly shows the absence of injury. How can that be shown, when, on the same subject, a correct and an incorrect instruction have been given? there being no means of knowing which had an influence on the decision of the jury.

Here we are not permitted to consider the substituted instruction as a substitute, or qualification of the second prayer, as it is expressly stated to be, "instead or lieu of the first of said prayers, and which was rejected." And it is likewise said, the second prayer was granted.

The third prayer is, "that there is no evidence in this cause from which the jury can find, that the acceptance of the deed from Marshall and wife, by the said Haney, was occasioned by the fraud or misrepresentation of Marshall." This assumes the acceptance of the deed from Marshall by Haney, without submitting it to the jury as a matter for their decision. The court were, therefore, wrong in granting such a prayer. .

The fourth contains the same assumption, and is, of course, likewise erroneous.

As this case is to be tried again in the court below, it is deemed proper to say we think the third and fourth prayers should have been refused, because there is *some* evidence tending to show fraud or misrepresentation on the part of Marshall, and mistake on the part of Haney. The testimony at the last trial was different, in respect to those matters, from what it was on the former trial.

In *Hunter vs. Van Bomhorst, & Co.*, 1 *Md. Rep.*, 517, it is said, "We do not feel disposed, in considering this case, to discuss the question so often mooted in this court, relating to the separate and independent functions of the court and jury, in regard to the sufficiency, or insufficiency, of testimony. It is enough, for the purposes of this case, for the court to say, that it finds testimony sufficient in the record, which appertains to and tends to the proof of the issue, which would warrant the court in submitting the question to the jury. We wish to be understood as merely saying, that there is legal testimony in the record, which ought to have been submitted to the jury, but that we express no opinion as to the weight or effect to be given to that testimony by the jury."

In accordance with the cautious views thus expressed, we deem it proper, on the present occasion, to refrain from saying more than we have said already, in reference to the evidence relating to fraud, misrepresentation or mistake. In attempting to go further, it would scarcely be possible to avoid producing an influence prejudicial to the rights of one or the other of the parties.

There being no necessity to express any opinion in regard to the sixth, seventh or eighth bill of exceptions, we affirm on the first and fifth, and reverse on the second, third and fourth, as also on the second, third and fourth prayers in the ninth exception.

*Judgment reversed and procedendo awarded.*

MASON, J. dissented in part.