# EDWARD G. CHERBONNIER *vs.* ROBT. H. BUSSEY AND OSBORNE I. YELLOTT, TRUSTEES.

*Construction of a Will Providing for Forfeiture of Interest of a Devisee in Case of Alienation— Tax Sale— Trusts—Power of Appointment.*

Land was devised to a trustee with directions to pay the rents to Charles, a son of the testatrix, for life, and the *cestui que trust* was vested with a power to dispose of the property by will. Testatrix also provided that in case of any alienation of the interest to which Charles may be entitled, whether such alienation be voluntary or involuntary, by his own act or default or by operation of law, or in case by any other means his rights to said rents or any part thereof shall become vested in any other person, then the trust for the benefit of Charles shall cease, and the trustee was directed to hold the land for the children of Charles, if any were living at the time of such forfeiture of his interest, but if Charles should then have no child, the trustee was directed to hold the land for Eliza, daughter of the testatrix, with power in her to devise the land. During the life of Charles, a part of the land was sold for non-payment of taxes. Eliza died leaving a will by which all her property was given to the appellant, and Charles died unmarried and without issue, leaving a will, by which the above-mentioned land was devised to the appellees. The question in this case was whether the tax sale of part of the land held in trust for Charles caused a forfeiture of his whole interest under the cesser clause, so that the remaining part passed under the will of Eliza. *Held,*

1st. That the tax sale was not an alienation of the rents within the meaning of the forfeiture clause, because the alienation which that clause prohibited was not an alienation of the land but of the interest of Charles, which was confined to the rents, and the intention of the testatrix was to provide for a forfeiture only in case Charles did, or permitted to be done, any of the prohibited acts.

2nd. That the interest of Charles in the remainder of the land devised in trust for him passed under his will which contained a formal execution of the power of appointment.

Appeal from a *pro forma* decee of the Circuit Court for Baltimore County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Edgar G. Miller, Jr.*, and *Leigh Bonsal*, for the appellant :

A tax sale of property may be accurately described as an alienation by the State, through the operation of its laws, of lands on which the owner had failed to pay the taxes. The language in the will, "Whether such alienation be voluntary or involuntary by his own act or default, or by operation of law, or in case by any other ways or means," is substantially the same as the above definition of a tax sale. We regard the language in this third paragraph of the will as meaning that if Charles E. R. Goodwin shall alienate any part of the land, or if he shall become bankrupt, have a judgment entered against him, or if any part of his farm be sold for taxes, that then his interest shall at once cease and the limitation over take effect. We cannot conceive of more appropriate language for the accomplishment of the purpose of the testatrix than the expressions made use of in this will

In *Brandon* v. *Robinson*, 18 Vessey, 429. Lord Eldon said : "There is no doubt that property may be given to a man until he shall become bankrupt &ast; &ast; &ast; and after his bankruptcy over &ast; &ast; &ast; if that condition is so expressed as to amount to a limitation, reducing the interest short of a life-estate, neither the man nor his assignee can have it beyond the period limited." In *Bramhall* v. *Ferris*, 14 N. Y. 41, the opinion of Lord Eldon, is quoted with approval, and it was decided that a provision in a will, that the interest of a devisee for life should cease on the recovery of a judgment by creditors, was valid. Professor Gray, in section 78 of his book on "Restraints on Alienation," which is regarded as the leading book on this subject, says : "A provision in the gift of a life-estate or interest, that the estate or interest shall cease or go over to a third person upon alienation, voluntary or involuntary, of the life-estate or interest, is good." A vast number of cases are quoted by Professor Gray as authority for his statement. It would seem to us idle to discuss the authorities quoted by Professor Gray, inasmuch as in section 240 of the second edition of his book, in commenting on the decision of *Smith* v. *Towers*, in 69 Md., he writes : "The opinion of the Court, and

particularly the dissenting opinion of the Chief Justice, are by far the best discussions of the question to be found in the recent cases." Many cases are also cited in 2 *Jarman on Wills*, 870, &c., and in *Roper on Legacies*, 787 to 794.

*John I. Yellott* and *Osborne I. Yellott* for the appellees :

The will is to be construed from the language used and in the light of circumstances surrounding the testator at the time of its execution, and when the will in this case is thus construed the tax sales relied upon did not work a forfeiture. They are not mentioned in the forfeiture clause, nor can they be incorporated by any reasonable implication. The fact of their omission is an argument in favor of the contention they were not intended to work a forfeiture. A tax sale is not an alienation in the commonly accepted or technical meaning of the term, but works an extinguishment of the title of the individual owner. The tax sales in this instance did not effect an alienation, but a *cesser* of the titles in the property held, subject to the paramount title of the State.

The only interest Charles Goodwin had in the property devised for his benefit, was the right to receive the rents, issues and profits thereof from the trustee ; this was not an interest in the land, and has been held to constitute a legacy ; it was not an executed use in Charles, but the title to the land was in the trustee. The forfeiture clause in Penelope Goodwin's will does not provide for a forfeiture upon any alienation of the land, but provides the trust for Charles' benefit shall cease upon any alienation of his interest, to wit, an alienation of his right to receive the rents, issues and profits of the land. A tax sale is no such alienation of this right. The purchasers at the tax sales got no such right as Charles had enjoyed, to wit : The right to demand and receive from the trustee the rents and profits. That right vested in no purchaser, but was extinguished.

The clear intention of the testatrix was to devise the land so that her son might get the benefit of it, but so that he could not dispose of, mortgage or otherwise encumber his interest,

and so that his creditors, present or future, could not take it from him. The form of devise adopted is taken from Powell on Devises and has been in use for many years. The trust created was what is known as a spendthrift trust, the legality of which when properly created has always been recognized. Until the decision in *Smith* v. *Towers*, 69 Md. 77, there was a wide diversity of judicial determination as to whether property could be devised with exemption from liability from the debts of the devisee without a limitation over, and in Maryland the question was in doubt. This will was drawn before the decision in that case, and the exceptionally learned draftsman took no risk, but adopted the safe form. The devise over to Eliza J. Goodwin, was, in his view, a necessary part of the plan; this devise over, under which the appellant claims, was but a mere incident to the plan to save the devise to Charles from the lien of the Cockey judgment, which could only have been satisfied by an execution sale of the whole property.

The sale of portions of the property for taxes was the result of a breach of duty on the part of the trustee, and as such cannot operate to the detriment of the *cestui que trust*. The use was executed in the trustee, the beneficiary had no control over the land, and was under no obligation to pay taxes or other charges. If required for proper protection, the trustee could have sold portions of the land to meet tax burdens. A breach of duty by the trustee under the circumstances of this case cannot operate to destroy the interest of the beneficiary in the absence of collusion.

The limitation over being contingent upon a condition subsequent, the established rule is that such condition will not be raised by implication, but must be clearly expressed; here it is not so expressed, but must be inferred from formal language adopted for carrying out a plain intent wholly different from that sought to be established. *Roberts* v. *Stevens*, 84 Me. 327; *Bank* v. *Adams*, 133 Mass. 170; *Grothe's Appeal*, 135 Penna. St. 596; *Am. and Eng. Ency. of Law*, vol. 27, p. 164; *Tiedman*, sec. 513; 1 *Cruises Digest*, 412, 489; *Kilpatrick* v. *Baltimore*, 81 Md. 195.

The codicil and will are to be read together and both given effect if possible.   Here, the special power of testamentary disposition given to Charles by the will was enlarged into a general power by the codicil.   A construction that this general power was intended to survive Charles' estate is warranted by the language used, and is in entire harmony with the whole plan of the will.   This power of testamentary disposition was not extinguished by the tax sales, if we concede the interest of Charles terminated with such sales.   The power is one in gross or collateral, and in no sense appendant, and as such is not extinguished by a termination of the donee's estate.   It is wholly independent of such estate and could be defeated only by formal refusal to execute it.   Had it been a power appendant it would have not necessarily been suspended by an alienation of the particular estate to which the power was attached. Such intention must be found in the instrument creating the power.   Here, there is an absence of such expression of intent. 2 *Wash. on Real Prop.* 598, 594, 596; *Tiedman,* secs. 560–1; *Chance on Powers,* 3170; *Farwell,* 27–8; *Reid* v. *Gordon,* 35 Md. 174; *In re Stone,* 3 Irish Eq. Rep. 621, series 1868–9; *Jones* v. *Winwood,* 10 Sim. 150.

McSherry, C. J., delivered the opinion of the Court:

By the third article of the last will and testament of Penelope Dye Goodwin, a one-fourth part in value of a farm lying in Baltimore County, was devised in fee-simple to the late Thomas Donaldson, in trust, to pay over the rents, issues and profits to Charles E. R. Goodwin, a son of the testatrix, for and during his natural life, and after his death, if the son had previously married and had left children, then in further trust for such of the children and descendants of the son and in such proportions and interests as the son might designate and appoint by last will and testament ; and in the event of the son dying without leaving children or descendants living at the time of his death, then in trust for such grandchildren of the testatrix as should be living, to be divided equally among them.   By a codicil this special power of appointment was en-

larged to a general power of appointment. The third article of the will contains a formal cesser clause by which it is declared "that in case of any alienation of the interest or any part of the interest to which the said Charles may be entitled under the terms of this article of the will, whether such alienation be voluntary or involuntary, by his own act or default or by operation of law, or in case by any other ways or means his rights to the rents, issues and profits aforesaid, or any part thereof, shall become vested in any other person or persons whatsoever, then and thenceforth," the trust created for the benefit of Charles "shall cease and be void," and the trustee was directed to hold the land in trust for the children of Charles if any were living at the time of "said forfeiture of his interest," but "if at the time of said forfeiture" Charles should have no child or descendants living, then the land was required to be held in trust for Eliza J. Goodwin, the daughter of the testatrix, in the same manner, on the same conditions and with the same powers provided in the first article of the will in regard to that part of the same farm devised to the same trustee for the benefit of the daughter. The only provision of the first clause to which it is necessary to make allusion is that by which Eliza J. Goodwin was empowered to devise to such persons and in such portions and interests as she might deem proper the real estate given to Mr. Donaldson in trust for her. Charles Goodwin never married and had no children or descendants. During his life about twenty-six acres of the land devised to Mr. Donaldson in trust to pay the rents, issues and profits to Charles were sold, not by Charles but by the public officials for the non-payment of the taxes due on the land. These sales, it is insisted, caused the cesser clause to become operative and wrought a forfeiture of the interest of Charles and vested that interest in his sister. In virtue of the power which Eliza J. Goodwin possessed under the will of her mother, she made a last will and testament devising not only the real estate given under the first clause of Penelope Dye Goodwin's will to Mr. Donaldson in trust for Eliza, but also " all other estate and property " of hers " however derived."

The whole of this was devised to a trustee to pay the rents and profits to her brother Charles during his life, and upon his death the property itself was given absolutely to her nephew Edward C. Cherbonnier. Eliza J. Goodwin died in eighteen hundred and ninety-eight. Under the power contained in the codicil to his mother's will Charles made a will by which he devised the property described in the third clause of her will to the appellees to be sold. He died in eighteen hundred and ninety-nine. After the appellees had qualified as executors they asked the Circuit Court for Baltimore County, sitting in equity, to take jurisdiction of the trust reposed in them by the will of Charles Goodwin, and subsequently they proceeded to make sale of that part of the land devised to Mr. Donaldson in trust for the benefit of Charles, which remained after the twenty-six acres sold for taxes were deducted. Thereupon, the appellant, Edward C. Cherbonnier, sought by injunction to restrain the appellees from selling the land. He insists that the tax sales referred to caused a forfeiture of the whole interest of Charles and vested that interest in Eliza J. Goodwin ; and he further contends that the interest which thus vested in Eliza passed under her will to him absolutely after the death of Charles, and that, therefore, the appellees took no title to this property under the will of Charles and consequently have no authority to dispose of it. So the ultimate questions are, what interest did Charles take under the will of his mother ; and was that interest and the whole provision made for him forfeited by reason of the tax sales ? In other words, did these tax sales vest the equitable estate in Eliza J. Goodwin so that it passed under her will to her nephew, the appellant. There is a secondary question as to whether the will of Charles is a valid exercise of the power of appointment conferred upon him by the codicil to his mother's will.

It is obvious that the legal title to the property disposed of by the third article of Penelope Dye Goodwin's will was vested in Mr. Donaldson, the trustee, and it is equally obvious that Charles Goodwin had only an estate in the rents, issues and profits. His right to these was restricted to the duration of

his life. Under this provision the trust property passed to the trustee with all its incidents unimpaired. He took the whole legal title to the property with a power of alienation which, under the codicil could only be exercised with the written consent of Charles, whilst the *cestui que trust* took the whole legal title to the accruing rents, issues and profits as and when they were paid over to him. *Broadway Nat. Bk.* v. *Adams,* 133 Mass. 170. The interest of the *cestui que trust* under his mother's will, was, therefore, simply an interest in the rents, issues and profits. This being so, what effect did the tax sales have upon that interest?

It will be noted that the cesser clause provides for the extinction of the trust declared for the benefit of Charles upon the happening of either of two contingencies; and these are, *first,* the alienation of the interest or any part of the interest to which Charles was entitled under the will, whether that alienation was voluntary or involuntary, by his own *act* or *default,* or by operation of law; *secondly,* the event that by any other ways or means, his right to the rents, issues and profits, or any part thereof, became vested in any other person or persons whatsoever. The first contingency presents two alternatives with respect to the alienation of his interest or any part of his interest; and these are, *first,* a voluntary alienation by his own act or default, and *secondly,* an involuntary alienation by operation at law; but both alienations relate exclusively to the *interest* which Charles was entitled to under the will. The *second* contingency could arise only in the event that the right of Charles to the rents, issues and profits, or any part thereof, had become vested in some other person or persons by any other ways or means than those antecedently indicated. The alienation prohibited does not mean an alienation of the *land,* but solely an alienation of the *interest* or any part of the *interest* to which Charles was entitled. There is no pretence that the tax sales, which effected a change in the *ownership* of the land, were voluntary alienations by Charles of his *interest* by his own act; and it comes to the question whether these tax sales were involuntary alienations of his *interest* by his de-

fault or by operation of law, or whether his right to the rents, issues and profits became vested thereby in any other person. And this brings us to a brief consideration of the purpose and effect of a cesser provision in a will.

At one time there had been considerable discussion in the Courts of England with respect to the validity of a testamentary provision which undertook to secure an income to an individual, but placed the property beyond the reach of his creditors. The law of England did not allow the owner of property to bestow it on another deprived of its incidents. Of these incidents the right of alienation is one of the most important. Hence, it became an established doctrine that where real or personal estate was given to a man during his life, or for any definite interest of greater or less extent, accompanied with the strongest injunctions against alienations by him, the prohibition was nugatory and the beneficiary enjoyed unfettered his disposing power. And this was also the law of Maryland. But on the other hand *income*, though it could not in England (except in the instance of a married woman) be the subject of an inalienable trust, could, nevertheless, be made to cease on alienation, bankruptcy or other such event. *Martin* v. *Mayham*, 14 Sim. 37; *Rockford* v. *Hackman*, 9 Ha. 475; *Re Dickson's Trust*, 1 Sim. N. S. 37. It has never been doubted in this State that such a provision could be made with respect to a life-interest in income, and until the decision of *Smith* v. *Towers*, 69 Md. 77, usually when a trust of this character was created a cesser clause was ordinarily though not invariably inserted. But such a provision is now no longer necessary if appropriate words are used to indicate that the income is intended solely for the benefit of the *cestui que trust*. Its adoption in the first instance grew out of the accepted doctrine, already alluded to, that there could be no such thing as an estate without the incident of alienability. But inasmuch as it is now settled in many jurisdictions, including Maryland, "that the power of alienation is not a necessary incident to an equitable estate for life" (*69 Md. 84*) there is no longer any need to insert the cesser clause. Whilst the cesser clause is

not now required if other adequate terms are employed it may be used, and when used it must be interpreted.

If these tax sales were not involuntary alienations of the interest of Charles Goodwin by his default or by operation of law, or if they did not vest his right to the rents, issues and profits in any other person, then the limitation over in favor of Eliza J. Goodwin did not take effect and her will did not vest title to the unsold land in the appellee. The duty to pay the taxes was on the trustee, the holder of the legal title to the land, and it was not upon the *cestui que trust* who was entitled only to the rents, issues and profits arising from the land. *Latrobe* v. *M. & C. C. Balto.*, 19 Md. 13. "In the absence of any law 'regulating the imposition and collection of taxes' the trustee holding the legal title" is "properly chargeable with the tax." *Tyson et al.* v. *State*, 28 Md. 587. If the taxes were properly chargeable to the trustee it became his duty to pay them. The non-payment of them was consequently no default by the *cestui que trust*, and hence the alienation resulting from their non-payment was not an alienation by his default. It is proper in this connection to say that the land was uncultivated and produced no revenue, and this fact accounts for the non-payment of the taxes by the trustee. So careful and accomplished a lawyer as the late Mr. Donaldson undoubtedly was would never have suffered any part of the land to be sold to liquidate unpaid taxes if there had been any income from the land. As the taxes had to be paid, and as there were no funds with which to pay them, he very probably permitted a portion to be sold instead of selling it himself, as he would have been justified in doing.

Were the tax sales alienations by operation of law? The sale and the subsequent conveyance of part of the *land* was an alienation of the land sold, but that is not the alienation which under the terms of the cesser clause caused a forfeiture; and the alienation of a part of the land did not cause a forfeiture because the alienation which the clause prohibited was not an alienation of the *land*, but an alienation of the *interest* of Charles, and the interest of Charles was confined to

the rents, issues and profits. There was no alienation of these because the sales *extinguished* the right of the *cestui que trust* to receive them and terminated the title of the trustee, and did not confer upon the purchasers of the land a right to receive the rents, issues and profits from the trustee.

It is obvious, we think, from the face of the will and from the scope and purpose of the cesser clause that the intention of the testatrix was to protect the interest of her son from the consequences of his own improvidence and his own acts, and not to deprive him of that interest because of the defaults or omissions of any one else. The thing given to him was the thing forfeited if *he* did or permitted to be done any of the acts which the clause forbade being done in regard to *that* thing; and consequently the testatrix did not contemplate the forfeiture of the thing given if something else were alienated, not by him, but under the power of the State in subordination to which all property is held. This is rendered perfectly clear when the limitation over is considered. That which was limited over to Eliza J. Goodwin was not the residue of the land if a part of it were sold or alienated, but the rents, issues and profits which had been given to Charles if *they* or any part of *them* were dealt with in any of the ways prohibited by the clause. The tax sales did not constitute an alienation of the rents, issues and profits by operation of law; the sales *extinguished pro tanto* those rents, issues and profits, and they extinguished them by reason of no default of the *cestui que trust.*

All property is held subject to the paramount power of the State to seize and sell it for the non-payment of taxes due by the owner, just as all property is held in subordination to the equally paramount right of eminent domain. Had a portion of this land been taken under the latter power there would have been an appropriation or alienation by operation of law, but no one would seriously contend that such a proceeding would have caused the forfeiture clause to become effective or would have made the limitation over of the rents, issues and profits to Eliza J. Goodwin operative. A tax sale of part of the land for the non-payment of taxes chargeable to the trustee

was manifestly no more within the contemplation of the testatrix and is no more within the terms of the cesser clause than an appropriation of the same part of the land under the right of eminent domain would have been.   An alienation in either way would have worked no forfeiture of the interest of Charles.

The alienation prohibited was an alienation of the *interest* of Charles..as contradistinguished from a conveyance of the fee held by the trustee.   Whilst this is reasonably apparent on the face of the will it is made more obvious by the codicil. By the latter the trustee was given power and authority to sell and convey the real estate devised by the third article of the will, provided " that every sale made of· any part of the portion named in the third article be made during the life of my son Charles and 'with his consent witnessed in writing by him signed."   It can hardly be said that a hostile sale of the land for the non-payment of taxes was a prohibited alienation of the *interest* of Charles, when a sale of the same land by the trustee with the written consent of Charles would not have been an alienation of his interest at all.

There is one other inquiry left and that is this :   Did the right of Charles to the rents, issues and profits or to any part of them, become vested in any other person or persons ? There is no pretense that they did unless the tax sales caused them to do so.   But the tax sales could not have produced that result because instead of transferring to the purchasers at the tax sales any portion of the rents, issues and profits the sales divested the legal title of the trustee to the land, vested that title in the purchasers and *extinguished* the rents, issues and profits if any had ever existed or had arisen out of the land sold.

As to whether the will of Charles Goodwin was a valid execution of the testamentary power, which was given to him by the codicil to the will of his mother, little need be said.   The will of Charles Goodwin was made in July, eighteen hundred and ninety-nine.   It disposes of this land in controversy and specifically refers to the power. contained in the codicil alluded .

## UNITED RAILWAYS *vs.* SEYMOUR. · 425

Md.] Syllabus.

to. Though, since the *Act of 1888, ch. 249,* no reference need be made to the instrument creating the power when the power is exercised, because under that statute all property, as well that over which the testator has a power of appointment as that owned by him will pass unless a contrary intention be apparent, still the specific reference in the will of Charles to the power itself, and to the property which was subject to the power, leaves no room to doubt that it was his intention to execute the power. His will is an explicit, formal execution of the power and distinctly disposed of the property.

The conclusions we have reached and have announced in this opinion are in accord with the *pro forma* decree of the Court below, and for the reasons we have assigned that decree will be affimed.

<em>Decree affirmed, with costs above aud below.</em>

(Decided January 18, 1901.)