COLGATE PRICE et·al. *vs.* CALEB D. CHERBON-
NIER et al.

*Power of Appointment—Creditor's Bill.*

A was entitled to an equitable life estate in property with power to devise
the same to such of his children as he might designate by last will, and
in the event of his death without leaving children the property was to
pass to the grand-children of the creator of the power. A died with-
out issue and by his will attempted to dispose of the property. *Held*,
that the creditors of A cannot subject the property to the payment of
their debts.

Appeal from the ·Circuit Court for Baltimore County
(FOWLER and BURKE, JJ.)

The cause was argued before MCSHERRY, C. J., BRISCOE,
PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*D. G. McIntosh* and *D. G. McIntosh, Jr.*, for the appellants.

*Z. Howard Isaac*, for the appellees.

PAGE, J., delivered the opinion of the Court.

This appeal is from a decree of the lower Court sustaining
a demurrer to the bill filed in the case and dismissing the pro-
ceeding.

The facts as stated in the bill are substantially as follows,
viz.: William H. Goodwin was in his lifetime indebted unto
Charlotte Price and Mary B. Price respectively, in the sums
set out in the bill. He died possessed of some personal estate,
not sufficient to discharge his debts and of the real estate here-
inafter set forth. He left a last will and testament, by which
after certain devises, the residue of the estate was to be dis-
tributed equally among the children then living of. John O.
Price. By the will of Penelope D. Goodwin, the said real
estate was devised to one Thomas Donaldson, in trust to pay
the rents, issues and profits to her son, the said William H.

Goodwin, during his life, and after his death in case the said
William should marry and leave issue living, in trust for such
children and in such proportion and interests as he should des-
ignate and appoint by last will and testament, and in case he
died leaving no children or descendants living at the time of
his death, then in trust for such grandchildren of the testatrix
as should then be living, to be divided equally between them.
Subsequently by a codicil to her will, she gave the trustees
the title to the said property in fee subject to the said trusts
with power to the trustee to sell and convey the same or any
part thereof on such terms as he might deem proper, provided
that any such sale should be in the lifetime of William and
with his consent witnessed in writing.   Subsequently David
G. McIntosh by substitution under an order of the Court be-
came the trustee under the will of Penelope Goodwin in the
place of the trustee named in the will.   The said property
being unproductive and supplying no income, Charlotte Price
the appellant with the consent and approval of the trustee, and
upon the assurance she would be compensated therefor, took
William H. Goodwin to board with her, and supported him
from December, 1895, to February, 1902.   Being without
funds, a portion of the real estate was sold for taxes from time
to time, and the said William H. Goodwin entered into an
agreement with Charlotte Price and Colgate Price, that if they
would advance the money to redeem the land so sold, the said
Goodwin would execute a will and devise them a portion of
the land; and in pursuance of the same the said Charlotte and
Colgate Price did advance the money which was necessary to
enable the trustee to redeem the land.   Goodwin died without
leaving widow or children.   The prayer of the bill is that the
personal estate may be applied in due course of administration
in payment of the debts of the complainants, the appellants,
&c., and that the real estate or so much as may be required
be sold for the payment of debts that may remain unsatisfied
after the application of the personal estate, &c.

The questions presented are: 1st, does a creditor's bill lie
for the sale of the said real estate? and 2nd, can the agree-

ments with Colgate and Charlotte Price be enforced by declaring them to be equitable liens upon the property?

There seems to be no question that William H. Goodwin under the will of Penelope Goodwin took an equitable life estate in the property with a power of appointment at his death. The appellant contends that "when a person has a general power of appointment over property, and actually exercises the power, whether by deed or will, the property appointed shall form a part of his assets, and be subject to the claims of creditors in preference to the claims of the appointee, and he cites in support of this doctrine several cases of which *Johnson* v. *Cushing*, 15 N. H. 298, is one of the clearest. There the Court by CHIEF JUSTICE PARKER said: "When the owner of property who has the right to dispose of it in such manner and under such limitations as he pleases, confers upon another the general power of making such disposition of it, as he pleases, or in other words invests him with all the attributes of ownership over it and the other accepts the power thus tendered to him, and undertakes to exercise dominion over the subject-matter as if he was owner, the original proprietor having authorized the other to treat it as if it was the property of the latter, by exercising all the power over it which he could exert if it were entirely his property; and he having undertaken to treat it as if it was his property by making a disposition of it, under such a power, a Court of equity may well do what the parties have done; that is treat it as the property of the appointer and make it subject to the incidents attending such property."

Without inquiring whether this is a correct enunciation of the principles applicable to the state of facts, therein set forth, it is enough to point out how widely the facts of that case differ from the one at bar. Here William Goodwin became entitled under the will of his mother, to an eqitable estate for and during his natural life. *Cherbonnier* v. *Bussey*, 92 Md. 413, *et seq.*

After his death his interest passed to such of his children and descendants as he should designate and appoint by last

will; and in case he left no children or descendants then living, then in trust for such grandchildren of the testator as shall then be living to be equally divided among them. So that instead of having the right to dispose of the property *as he pleased*, William held only a life estate with power to appoint by last will to his children; and in the event of his leaving no children, then the property was to go to the grandchildren of his mother Penelope Goodwin. The power of appointment, conferred is to be among a limited class, viz., his children and descendants; and if there were none of these living at the time of his death, it was to go by the terms of the will, to such grandchildren as were then living. The power to appoint was therefore limited, to be executed among surviving children or descendants; and therefore William having left no children or descendants surviving him, the property passed by the terms of the will of Penelope Goodwin to her grandchildren who were then surviving him, equally. "Where there is an express estate for life, given by will with liberty to give the fee to particular persons, the devisee will take for life with a power to appoint the estate to the objects designated." 1 *Sugden on Powers* (3 Am. ed.)—p. 179. It is obvious therefore that if the contention of the appellant were sustained; that is, if it could be held that the property in which he held an equitable life estate only with this power of appointment could be diverted to the creditors of the donee, the effect would be, that it cannot go to the persons whom the donee might appoint, nor in the event of a failure of children of William, to the grandchildren; as was directed by the will of Penelope Goodwin. Such diversion to creditors, therefore would be in contravention of the testator's intent as expressed in her will.

This view is maintained in many cases in this State and elsewhere. The subject has been thoroughly discussed, in *Wales, Admr.*, v. *Bowdish's Extr.*, 61 Vt. 31, and many authorities are there cited. In *Commonwealth* v. *Duffield*, 12 Pa. St., the same doctrine was held; that Court speaking through CHIEF JUSTICE GIBSON said, "An appointee derives title immediately from the donor of the power, by the instrument in which it

was created; and consequently not under but paramount to
the appointor by whom it was executed; by which it is im-
possible to conceive that the appointor's creditors have an
equity." In Maryland this doctrine has been clearly stated
in the case of *Balls* v. *Dampman, Extr.*, 69 Md. 390, where it
was said that Mrs. Balls "had under her husband's will only
the power to appoint, that is, to name by will, the person or
persons to whom the property should go; and she had no au-
thority to devise it for the payment of her debts, that is, to
encumber or consume it altogether for her own use. The
construction insisted on would, if adopted, practically convert
her from a mere life tenant into an owner of the fee. She had
no right to bind this property for the payment of her debts,
or to fasten those debts upon it, and had such an intention on
her part been expressly stated in her will, it could not have
been given effect because not within the scope of her power of
appointment." And in *Wilks* v. *Burns*, 60 Md. 68, it was
held, that the donee of a power, having no reversionary
interest and required to execute the power if at all, by will,
could not enter into a contract with reference to the execution
of that power, and that the contract by which the donee of
the power agreed to execute an irrevocable will was void,"
and this was afterwards reaffirmed in *Worthington* v. *Rich,
Trustee*, 77 Md. 270. In *Conner, Ex'rx.*, v. *Waring*, 52 Md.
733, it was said, "the party taking under and by execution of
the power, took under the donor and in like manner as if the
power and instrument executing it, had been incorporated in
one instrument."

It follows, therefore, that the bill cannot be sustained on
any ground and therefore the decree of the lower Court must
be affirmed.

*Decree affirmed, the appellant to pay
the costs.*