# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed May 20, 1909.

LOUIS ELIE JOSEPH HENRY DE GALARD DE BRASSAC DE BEARN, PRINCE DE BEARN ET DE CHALAIS,

VS.

ROSS R. WINANS ET AL.

*Barton, Wilmer, Ambler & Stewart* and *Maurice Leon* (of New York) for plaintiff.

*Bernard Carter* and *John E. Semmes* for defendants.

SHARP, J.—

The facts out of which this controversy arises are as follows:

On June 19th, 1905, Mr. Ross R. Winans, of Baltimore city, at that time being in Paris, executed, in anticipation of the marriage of his daughter, Beatrice Winans, to the plaintiff in this case, the following instrument, called by the parties in these proceedings the Deed of Trust:

1. "Know all men by these presents, that Ross R. Winans, of the city of Baltimore, in the State of Maryland, United States of America, in consideration of his love and affection to his daughter, Beatrice Winans, and in contemplation of her approaching marriage with Le Prince de Bearn et de Chalais, and in consideration of one dollar, good and lawful money of the United States of America, to him in hand paid by Ross R. Winans and Hon. F. C. Latrobe, wishing to secure to his daughter an income of eighty thousand francs, (Fr. 80,000) annually, hath given, granted and transferred, and doth by these presents give, grant, transfer and convey to the said Ross R. Winans and F. C. Latrobe:

First Consolidated Mortgage six per cent. bonds of the Chicago St. Paul, Minneapolis and Omaha Railway, due in 1930, of a par value of............$244.000

First refunding Mortgage three and a half per cent 1997 bonds of the New York Central and Hudson River Railroad, of a par value of ................ 40,000
                                          ————
                                        $284,000

to have and to hold the same, the survivors and successors of them, upon the trusts hereinafter declared, namely, to receive the interest and income thereof, and to apply the same to the use of the said Beatrice Winans during her life, free from the disposal or encumbrance or the control of any husband, and as her separate estate, which application to her use may be made by payment to her on her own individual receipt in duplicate, but not by way of anticipation, these payments to be made quarterly at the domicile of the married pair.

2. And upon the further trust upon the death of the said Beatrice Winans, to dispose of the capital of the fund hereby created in such manner to and amongst such person or persons and in such amounts as the said Beatrice Winans may, by a valid will and testament, duly executed, appoint, and upon such limitation by way of trust or otherwise, as in the discretion of the said Beatrice Winans may be lawfully devised.

3. Should, however, the said Beatrice Winans die intestate, leaving no lawful issue surviving her, then the said trustee shall transfer one-half of the said capital of the said fund to the said Ross R. Winans, or in the case of his pre-decease, shall pay the one-half of the said capital of the said fund to the residuary legatees named in the last will and testament of the said Ross R. Winans in such amounts or proportions, and under such conditions, as shall be designated in such last will and testament, or in case the said Ross R. Winans die without leaving a valid will and testament, then to and amongst his heirs and next-of-kin in the proportions provided by the Revised Statutes of the State of Maryland, in the case of intestacy, and the other one-half of the capital of such fund shall be paid to the surviving husband of the said Beatrice Winans, the said Prince De Bearn Et De Chalais.

4. Should the said Beatrice Winans die intestate leaving lawful issue surviving her and a husband surviving her, then I direct my said trustees to transfer one-half of the said capital of the said fund to the surviving husband aforesaid, and to transfer the remaining one-half of the said capital to the lawful issue of the said Beatrice Winans, said issue to take share and share alike, per stirpes and not per capita.

5. Should the said Beatrice Winans die intestate leaving lawful issue surviving her but her husband not surviving her, then in that case to transfer the whole of the said capital of the said fund to the lawful issue of the said Beatrice Winans surviving her, share and share alike, said lawful issue to take per stirpes and not per capita.

6. It shall be lawful for the trustees herein named and the survivor or survivors of them and their successors in their discretion to sell and convey all or any part of the said trust property, and to re-invest the same in their discretion, in any bonds of an actually dividend paying railroad of the United States of America, secured by a mortgage, or in United States Government bonds or in Baltimore City stock, and to re-invest from time to time the re-investments made during the trust in the same order of securities.

7. In case of the absence or inability of any sort of either of said trustees or their successors, it shall be lawful for the remaining trustee to receive and apply all the income according to the terms of trust.

8. In the case of the death or resignation of either of said trustees or their successors in office, it shall be lawful for the remaining trustee to appoint an associate a new trustee, but in case of the death or resignation of Ross R. Winans, the other trustee shall secure in the first instance the approval of the said Beatrice Winans, and in the second instance the approval of the said Ross R. Winans to the new appointment.

9. In witness whereof, the parties have hereunto set their hands and seals on this nineteenth day of June, one thousand, nine hundred and five.

ROSS R. WINANS, (Seal.)<br>ROSS R. WINANS, (Seal.)

Witness as to ROSS R. WINANS, Individually, and as Trustee, MANDEVILLE C. JACOBUS.

FERDINAND C. LATROBE (Seal.)

Witness as to signature of FERDINAND C. LATROBE, EDWARD DE LACOUR.

Republic of France:<br>
   City of Paris: } ss.<br>
U. S. Consulate General.

I hereby certify that on this nineteenth day of June, in the year of our Lord, one thousand, nine hundred and five, before me, the subscriber, Hanson C. Coxe, United States Deputy Consul General at Paris, France, residing therein, duly commissioned and sworn, personally came and appeared Ross R. Winans, individually and as trustee, to me personally known and known to me to be the individual described in and who executed the aforegoing instrument, and he did thereupon acknowledge the same to be his act and deed.

HANSON C. COXE,

(Seal.) Deputy Consul General of the United States of America at Paris, France.

The deed of trust was subsequently signed by Mr. Latrobe in Baltimore, but was never acknowledged by him before a notary or other officer. For convenience in reference I have numbered the various paragraphs of the deed, though no numbers are contained in the original instrument.

Subsequently Miss Winans and the plaintiff were married, the civil ceremony took place on June 22nd, 1905, and the religious ceremony on June 24th, 1905, both in the city of Paris.

On June 29th, 1905, Princess de Bearn executed in the city of Paris, a holographic will, written in French.

It was agreed at the hearing that the following is a correct translation:

Beatrice Winans, Princess de Bearn et de Chalais. Translation.

I, the undersigned, Beatrice Winans, Princess de Bearn et de Chalais, wife of

Louis Elie Joseph Henry de Galard de Brassac de Bearn, Count and Prince of Bearn and Chalais, attache to the French Embassy in Russia, with whom I live in Paris, No. 2 Rue de Commaille, have made my will as follows:

I gave and bequeath to the Prince of Bearn, my husband, the totality of all my property, personal and real, that I may leave at my decease, without exception, consequently I institute him my universal legatee. I institute equally the Prince de Bearn, my husband, to be my testamentary executor.

Made and written entirely in my own hand at Paris, the 29th day of June, 1905.

(Signed) BEATRICE WINANS, Princess de Bearn, et de Chalais.

Signed, sealed, published and declared on the day of the execution thereof by the testatrix above named as and her last will and testament, in the presence of us, who, at her request, in her presence, and in the presence of each other, hereto subscribe our name as witnesses.

(Seal.)      BEATRICE WINANS,
Princess de Bearn et de Chalais.

MR. GEORGE HENRY THIERRY,
Notary's Principal Clerk,
Residing in Paris, No. 1,
Rue de Lille.
G. THIERRY.

MR. ESSICH FRANCOIS VIARD,
Notary's Clerk, Residing at
Paris, 234 Bd. St. Germain.
E. VIARD."

Two children were born, Beatrice on April 17th, 1906, and Henry on October 11th, 1907. On October 17th, 1907, the Princess died.

At the time of her death, she was living with her husband in St. Petersburg, where the Prince was stationed as a member of the French Embassy. The will was in his possession, and was sent after her death first to Mr. Jacobus.

Mr. Winans' counsel in Paris, and by him forwarded to Mr. Winans in Baltimore.

It was offered for probate in the Orphans' Court of Baltimore City, was probated and letters of administration c. t. a. granted to Mr. Winans and Mr. Ferdinand C. Latrobe.

The will was not probated in France, nor was any action taken in any way by the Courts of that country, in connection with the deed of trust, the will or settlement of the estate.

The administrators filed an inventory in the Orphans' Court of Baltimore City, in which they treated the property conveyed by the deed of trust as a part of the estate of Beatrice Winans. The securities mentioned in the deed of trust comprised the entire estate, which came in their hands as administrators. The testatrix left no other property except jewelry and other personal effects.

On the 20th of August, 1908, the administrators passed an account in the Orphans' Court of Baltimore city, in which, after allowances for payment of the expenses of administration and certain other payments, the balance of the trust estate, amounting to $322,-744.54 was distributed by the Court.

One-third to the plaintiff in his own right, and two-thirds to the plaintiff, as guardian of his children.

On the — day of ————, the plaintiff was appointed by the Orphans' Court, guardian of his two children. He duly qualified, gave bond [dated August 28th, filed in Orphans' Court October 28, 1908], for the performance of his duties as guardian in the usual form.

On the 28th day of October, 1908, the securities mentioned in the deed of trust were divided pursuant to the account, one-third to the plaintiff in his own right, and the other two-thirds to the plaintiff as guardian of his children.

On the 28th of October, 1908, the plaintiff executed the following releases to the trustees:

(PLAINTIFF'S EXHIBITS
NOS. 5 AND 6.)

"Whereas, by a deed of trust, dated June 19th, 1905, Ross R. Winans, did grant and convey to Ross R. Winans and Ferdinand C. Latrobe the following personal property, that is to say: $244,000, par value, First Consolidated Mortgage Bonds of Chicago, St. Paul, Minneapolis and Omaha Railway, and $40,000 par value, First Refunding Mortgage Bonds, three and one-half per cent. of New York Central and Hudson River Railroad, in trust for the use of his daughter, Beatrice, she to enjoy the benefit of the income thereof for and during her natural life, with power to dispose of the principal by a lawful and duly executed last will and testament, and subject to other limitations fully set forth and contained in said deed of trust.

And whereas, the said Beatrice subsequently married in Paris, France, Louis Henry de Galard de Brassac, Prince de Bearn and de Chalais.

And whereas, the said Beatrice thereupon (on account of said marriage known as the Princess de Bearn and de Chalais), subsequently died in St. Petersburg, Russia, leaving surviving her, her said husband and two minor children, namely, a daughter, Beatrice de Bearn, and a son, Gaston de Bearn;

And whereas, the said Beatrice. Princess de Bearn and de Chalais, left a last will and testament, which last will and testament having been filed in the Orphans' Court of Baltimore City, of which city they, the said trustees, Ross R. Winans and Ferdinand C. Latrobe, are residents;

And whereas, the letters of administration c. t. a. have been granted by said court upon the estate of the said Princess de Bearn and de Chalais to Ross R. Winans and Ferdinand C. Latrobe, the trustees as aforesaid;

And whereas, by an order of the said court a distribution of the said estate has been made by the said administrators as follows:

One third of the said estate amounting to $107,581.51, being awarded to me as the surviving husband of the said testatrix; and I having been appointed by the said court the guardian of the said minor children, have given bond as required by the said court for the remaining two-thirds of the said estate, amounting to $215,161.03, which was awarded to said minor children by said court, as fully set forth in the first administrators' accounts passed by the said administrators in said court.

Now, in consideration thereof, I, for myself, and in my capacity as guardian for the said minor children, do hereby release, acquit, exonerate, and discharge the said Ross R. Winans and Ferdinand C. Latrobe, Trustees aforesaid, their heirs, executors and administrators of and from all and every action, demand, claim or suit which could or might possibly be brought, exhibited or prosecuted against them, or any of them, for or on account of the same passing to me in my own right, or as guardian of my children above named, or the payment thereof, hereby declaring myself satisfied, contented and paid as above specified. Given under my hand and seal this twenty-eighth day of October, in the year nineteen hundred and eight.

Signed, sealed and delivered in the presence of    AUGUSTUS W. BRADFORD.

PRINCE DE BEARN ET DE CHALAIS.

### EXHIBIT NO. 5.

"Know all men by these presents:

That I, Louis, Henry de Galard de Brassac, Prince . de Bearn and de Chalais, of France, do hereby admit to have received from Ross R. Winans and Ferdinand C. Latrobe, administrator c. t. a. of Beatrice Winans, Princess de Bearn and de Chalais, in my capacity as surviving husband of the said testatrix, as fully set forth in the first administrators' account passed in the Orphans' Court of Baltimore city; for myself as surviving husband aforesaid, one-third of the estate as shown in said account, amounting to $107,580.51, and having given bond, as required by the said court, for the remaining two-thirds, as shown in the said account, as guardian for Beatrice and Gaston de Bearn, children of said testatrix, amounting to $215,161.03.

And in consideration thereof, I, for myself, and in my capacity as guardian, do hereby release, acquit, exonerate and discharge the said Ross R. Winans and Ferdinand C. Latrobe, administrators c. t. a., as aforesaid, their heirs, executors and administrators, of and from all and every ac-

tion. claim, suit or demand which could or might possibly be brought. exhibited or prosecuted against him, them, or any of them, for or on account of the sum as passing to me in my own right, and as guardian of my children above named, or the payment thereof, hereby declaring myself satisfied, contented and paid, as above specified. Given under my hand and seal this twenty-eighth day of October, in the year nineteen hundred and eight.

PRINCE DE BEARN ET DE CHALAIS.

Signed, sealed and delivered in the presence of    AUGUSTUS W. BRADFORD.

Both of these documents were acknowledged before a notary.

On January 18th, 1909, the bill in this case was filed. The Prince de Bearn is the plaintiff. The defendants are Mr. Winans and Mr. Latrobe in their capacities both as trustees and administrators, and the two children of the plaintiff. The bill asks that the true meaning and effect of the deed of trust be ascertained by the Court; that the will of the plaintiff's wife may be declared to be a valid exercise of the power of appointment conferred upon her by the deed of trust; that it may be decreed that by virtue of. the deed of trust and the will all the property held by the trustees became the property of the plaintiff; that the proceeding of the Orphans' Court in reference to the settlement of the estate and the releases given by the plaintiff to be cancelled and set aside, and for other and further relief.

Answers were filed by the defendants denying the plaintiff's contentions and setting up, by way of defense, and estoppel in pais, or a final settlement or compromise of all questions involved in the settlement of the estate. They rely on the account passed in the Orphans' Court distributing the estate; the releases executed by the plaintiff and various acts of the plaintiff, to be presently referred to.

The document executed by Mr. Winans, in Paris, on June 19th, 1905, called throughout these proceedings the deed of trust, entitled Beatrice Winans to receive the income from the trust estate during her life. She had no interest in the corpus except as such interest may be implied in the gift of the income. Her interest was for life only. At her death the trust expired by limitation. The trustees had then no further claims to the property and nothing further to do except to transfer the corpus to those entitled. The language of paragraphs one and two of the deed

is perfectly plain, and, considered alone, admits of but one construction.

Nor is this affected by the other paragraphs of the deed. Paragraph three provides for the event of Beatrice Winans dying intestate, leaving no lawful issue surviving her. In that event the trustees are to transfer one-half of the capital to Ross R. Winans, or in the case of his predecease to pay the one-half of the said capital to the residuary legatees named in his last will, etc., and the other half of the capital was to be paid to the surviving husband of the said Beatrice Winans, the said Prince de Bearn et de Chalais.

Paragraph four provides for the event of Beatrice Winans dying intestate leaving her husband and issue surviving her. In that event the trustees are to transfer one-half of the capital of the said fund to the surviving husband, and the remaining one-half to the issue of said Beatrice Winans.

Paragraph five provides for the case of Beatrice Winans surviving her husband, but leaving issue. In that event the whole of the said capital becomes the property of such issue.

There is nothing, therefore, in the context to modify the explicit language of paragraphs one and two.

Pursuant to the power contained in paragraph two Beatrice Winans executed a will, in which she gave all her property to her husband absolutely. There was no reference in the will to the power of appointment contained in the deed, but the code, Article 93 Section 323, provides:

"Every devise or bequest purporting to be of all real and personal property belonging to the testator, shall be construed to include also all property over which he has a general power of appointment, unless the contrary intention shall appear in the will or codicil containing such devise or bequest."

No contrary intention appears from the will. Her interest in the property, mentioned in the deed of trust, comprised all the property she owned except some jewelry and other personal effects.

The will was executed according to the laws of this State, as well as according to the laws of France.

It therefore appears that the will contained a valid execution of the power contained in the deed of trust.

On the execution of such a power the appointee takes under the instrument creating the power and not by descent from, or succession to, the donee of the power.

This he takes under the deed of trust and not the will. The effect of the execution of the power is the same as if the terms of the appointment had been originally inserted in the Deed of Trust.

Connor vs. Waring, 52 Md. 724.

In this case the facts were as follows:

Torrence died in 1852 leaving a will, in which he gave all of his property to his wife for life. He then added: "As to what shall become of it after her decease, I do hereby authorize and empower my said wife Elizabeth, by deed, will or otherwise, to give, grant, convey, devise or dispose of my estate unto and among all and such of my children or their issue in such manner and proportion, and for such terms and estates as she shall think fit."

He then added that his daughter's shares should be secured to them and their children in trust, etc. In March, 1823, the wife executed her will in which she expressly executed the power. Among other provisions she gave a portion of the property to trustees for her daughter, Louise, for life, and the remainder to her children. Louise died without issue. The Court of Appeals said (page 732): "The devise by Charles Torrence to his wife was for her life only, but by the power in his will he clothed this life-tenant with authority to dispose of the remainder of the estate among all or such of his children, or their issue in such manner and proportion, and for such terms and estate as she might think fit. Until this power was exercised, the reversion in fee remained in the heirs-at-law of the testator. But, when the power was executed by the will of the wife, the estates created thereby took effect in the same manner as if they had been created by the will which raised the power.

The party taking under and by execution of the power took under the donor, and in like manner, as if the power and instrument executing it had been incorporated in one instrument. In referring to the appointment made by the widow to the trustees for Louise, the court said, page 734: "This devise,

when taken in connection with the other portions of the will as manifesting the intent, clearly vested the legal fee in the trustees and heirs of the survivor, but, it was determinable fee, and consequently as soon as the death of the equitable life tenant occurred, without having had the issue to take the remainder, that event defeated and determined the estate at law conferred upon the trustees, and it became thence vested by way of reverter in the heirs-at-law of the original donee of the power." See also Balls vs. Dampman, 69 Md. 388; Price vs. Cherbonnier, 103 Md. 107.

It is therefore apparent, all questions of French law being left out of consideration, that by the execution of the power by his wife the plaintiff became entitled to the whole of the property conveyed to the trustees by the deed of trust.

But it is contended by the defendants that the testatrix, being a citizen of and domiciled in France, and the property being personal, the will must be construed and take effect according to the laws of that country. By the Civil Code of France, Section 893, it is provided as follows:

"No one can dispose of his property gratuitously except by donation inter vivos or by will under the terms hereinafter mentioned."

Section 913, is as follows: "Donations, either by instrument inter vivos, or by will cannot exceed the one-half of the property of the donator, if he leaves at his decease an only child, they cannot exceed one-third of this property if he leaves two children, or one-quarter if he leaves three children or more."

From this it is inferred that the will is void as to two-thirds of the estate, and that the children of the testatrix are entitled to two-thirds, notwithstanding the will. This was the distribution made by the Orphans' Court.

It is sufficient to say that in this case there can be no question of descent or distribution. The testatrix had a life estate only. Her interest, and that of her heirs or representatives, ceased on her death. Her right to dispose of the remainder arises out of the deed of trust, and not the law of France.

The appointee named in the will takes under the deed and not by descent or succession. The rights acquired must, therefore, be found in that instrument. It is, therefore, important to determine the construction and operation of this deed.

It is contended for the defendants that the deed of trust was a contract made and to be performed in France for the benefit of a French citizen, and for these reasons must be construed and given effect according to the law of France, and that the will of the Princess, who was a citizen of, and domiciled in France, must also be construed and given effect according to the laws of that country.

It is ordinarily true that a contract must be construed and be given effect according to the law of the place where the contract is made and is to be performed.

Pritchard vs. Waters, 106 U. S. 124; Liverpool G. W. I. Do. vs. Phoenix, 129 U. S. 397; 22 Ency. Law, Sections 1322, 1325, 1328.

But this is not a positive rule of law to be followed in all cases. It is a presumption merely that the parties to the contract have in mind the rights and obligations created by the laws of the country in which the contract is made and to be performed. This is, however, a question of intention to be determined by a consideration of the terms of the contract and surrounding circumstances. Ibid.

The deed of trust was prepared in Paris; it was signed by the donor in Paris; the only beneficiary at that time living was domiciled in Paris; the income was payable by the trustees to her in Paris. On the other hand, Mr. Winans describes himself in the deed as "of the City of Baltimore."

In the marriage contract, and all the other legal documents, he is described as a resident of the City of Baltimore. It is true he stated in his evidence that at the time the deed was made, he had no intention of returning to Baltimore, but he had acquired no home in Paris, nor had he formed or expressed any determination about his plans. He had never acquired a domicile in France.

The deed seemed to contemplate the signature of both trustees. Mr. Latrobe was domiciled in Baltimore, and was the last to affix his signature, which he did in Baltimore. It was then sent to Munroe & Company of Paris, for what purpose, does not ap-

pear. There was nothing in the contract which required it.

As a muniment of title the trustees were entitled to its custody. Presumably it was left with Monroe & Co. merely for safekeeping. The deed was written in English and acknowledged by Mr. Winans before the deputy consul-general of the United States in Paris. The securities conveyed were bonds of American corporations.

The most significant fact, however, in connection with the intention and Lex Loci Contractus, is that the deed creates estates, rights and liabilities and powers utterly unknown to the Laws of France.

In addition to holding the property and paying the income, the trustees were given the power to sell and convey all or any part of the trust property, to reinvest the same in their discretion in any bonds of an actually dividend paying railroad of the United States of America, secured by a mortgage, or United States Government bonds, or in Baltimore City Stock, and to reinvest the same from time to time, and to transfer the property to those entitled of remainder. In the absence or inability to either of the trustees, the remaining trustee was to receive and apply the income according to the terms of the trust. In case of the death or resignation of either of said trustees or their successors, the remaining trustee was directed under certain conditions to appoint an associate.

It is true the income was to be paid in Paris, and to that extent Paris was the place for the performance of the contract. It may be if this stipulation can be separated from the balance of the contract that so far as these payments are concerned should any differences arise, though none are suggested, the matter would be controlled by the law of France. 22 Ency. of Law, page 326, and cases cited.

But, it is obvious that the clauses of the deed relating to the trust, the power and the remainders cannot be determined by French law, as such things are utterly unknown to the laws of France. It may be the deed would be, in its entirety, inoperative in France. The use of technical terms of foreign law is evidence of intention. 22 Ency. of Law, 1366; Farlow vs. Farlow, 83 Md. 118.

It must, therefore, be held that the intention of the parties was that the lex loci contractus was the State of Maryland where all the parties were then domiciled.

It may be added that this court could not in any event enforce the deed of trust according to the French law, because there is no evidence in this case from which the court could determine what effect the French Courts would give to such a document. Foreign law is a question of fact and must be proved like other questions of fact.

De Sobry vs. De Laistre, 2 Harris & Johnson 164. In the absence of evidence to the contrary, foreign law is presumed to be the same as our own. McClellan vs. Kennard, 8 Md. 230, C. C.; Haney vs. Marshall, 9 Md. 194; State vs. P. & C. R. N., 45 Md. 41.

For these reasons the deed of trust must be construed and interpreted and given effect according to the laws of this State.

It is next contended that the capacity of the testatrix to will her property and the legal effect of the will must be controlled by the lex domicilii, that the Princess de Bearn, being a citizen of and domiciled in France, and the will made in France, and the property being personal, and her capacity by the laws of that country to bequeath property being limited, the will must take effect according to the laws of that country and the property pass as provided by Section 893, of the French Civil Codem, notwithstanding the fact, that her interest was only a power of appointment.

It may be mentioned again that there is, in this case, no question of descent or distribution. The appointee took, by grant, under the deed of trust. The exercise of the power of appointment did not involve the property of the donee but operates on the property of the donor. The authority to dispose of the property proceeds from the donor. Since the domicile of the donor and the trustees, and the lex loci contractus are all Maryland, it follows that the deed must be construed, and take effect according to the laws of this State. Sewell vs. Wilmer, 132 Mass. 131; Bingham's Appeal, 64 Pa. State 345; Coltings vs. Desartys, 17 R. I. 668; In re Hernando, 27 Chancery Div. 284; Blount vs. Walter, 26 S. C. 545; D'Huart vs. Harkness, 34 Bevan 327;

Goode of Halliburton, Law Reports, 1st P. & D. 90; Dicey, Conflict of Law, 1908, p. 706; Topham vs. Portland, 32 Law Journal of Chancery 2451; Wharton on Conflict of Laws, 1308, 1314, etc.

It therefore appears that the plaintiff in this case was entitled under the deed of trust to the entire estate.

But the defendants contend that the plaintiff is estopped from asserting this claim by the transactions which took place in connection with the probate of the will, the account passed by the Orphans' Court and releases.

The will was sent to Baltimore, and was admitted to probate by the Orphans' Court. Administrators c. t. a. were appointed. Pursuant to the opinion of a Paris lawyer, the property was treated as the property of the testatrix whose disposition was to be regulated by French law. The account was stated by the administrators in the Orphans' Court, in which the property was distributed according to that law, one-third to the husband, and two-thirds to the children. This account was passed August 20th, 1908. The plaintiff arrived in Baltimore in September. He took no steps to open the account until this bill was filed. He was appointed, qualified and gave bond as guardian of his children. Pursuant to the account, he accepted one-third of the corpus in his own right and the other two-thirds as guardian of the children, and executed releases to the administrators and trustees.

It could not be said at that time that no controversy existed. Private international law is confessedly a difficult subject. The authorities in many respects are conflicting, and different countries have different rules regulating the same subject.

A French lawyer, also a member of the American Bar, who, if for no other reason, should be regarded as entirely competent because he was counsel for the American embassy, has given an opinion that the will did not operate to convey more than one-third of the property to the plaintiff. The plaintiff had been advised to the contrary by his own attorney, Mr. Duquaire.

We have here all the elements of a valid and final settlement and compromise, confirmed by formal documents. Nothing could be more elaborate and formal than the release to the trustees dated October 28th, 1908.

The deed of trust, the will·of the princess, the administration account passed in the Orphans' Court, the appointment of the guardian, the receipt of the securities are recited and the whole confirmed. The release to the administrators of the same day though not so full, is equally decisive. The transactions, therefore, should be regarded as a compromise and settlement of all questions and the acquiescence, by the plaintiff in the distribution made by the Orphans' Court.

Family settlements stand upon a different footing from transactions between strangers. In this case there was a compromise of rights which were doubtful at least in the minds of the parties. There was a compromise or settlement which in terms covered all questions in controversy. It appears now that this property was the property of the father, and that he surrendered part of it to his children by mistake as to his rights. The settlement is nevertheless binding. The authorities on this point are numerous.

Stapleton vs. Stapleton, 1 Atkins 10.

Handwicth, Lord Chancellor, said "An agreement entered into on the supposition of a right or of a doubtful right, though it turns out the right was on the other side, shall be binding and the rights shall not prevail against this agreement of the parties." See the notes to this case in White and Tudor's Leading Cases in Equity, Vol. 2, p. 1675. Cahn vs. Cahn, 1 P. Wils. 727; Naylor vs. Winch, 1 Sims S. 555; Persei vs. Persei, 7 Cl. & F. 318; Smith vs. Smith, 36 Ga. 191; Owens vs. Hancork, 1 Head, Tenn., 573; Beeton vs. Fowler, 55 Vt. 391; Sup. Council vs. Campbell, 17 R. I. 402; Hoghton vs. Hoghton, 15 Beav. 278.

But, it is said by counsel for the plaintiff, that the plaintiff was unduly influenced by the trustees and their counsel, that a fiduciary relation existed between them and the plaintiff, and that his actions were in ignorance of his rights and influenced by the trustees; that the various acts referred to were not the free and voluntary acts of the plaintiff with full information of his rights. Counsel put emphasis on the fact that when he suggested to the trustees that he had been advised by his own counsel that the views of Mr. Jacobus were erroneous, and that he

was entitled to the whole estate, and that he thought he ought to employ independent counsel, he was persuaded by them not to do so.

The law on this subject is well stated in Hoghton vs. Hoghton (cited ante), p. 297.

This was a case in which undue influence was alleged to have been exerted by a father over a son. Romilly M. R. said: "The plaintiff (the son) contends that inasmuch as it was a voluntary instrument not executed for a valuable consideration it can be supported, if at all, only on the grounds of its being a proper and reasonable resettlement of family estates, knowingly and willingly entered into by him and he submits that in this view it cannot be supported both because the instrument itself is of an unreasonable character and because he executed it without professional assistance or advice, and without receiving proper explanation of its nature and contents—of which he asserts he was wholly ignorant and he asserts that he did so execute it under the influence and in obedience to the wishes of his father.

In transactions between members of the same family even though that relation subsists between them from whence the court will infer the moral certainty of the existence of considerable influence and the probability of its having been exercised, yet if the transaction be one which tends to the peace or security of the family to the avoiding of family disputes and litigation to the preservation of the family property, the principles by which such transactions must be tried are not those applicable to dealings between strangers, but such as upon the most comprehensive experience has been found to be most for the interest of families. (See also cases cited ante.)

It should be observed that in considering the facts on this subject, there was no personal hostility to the plaintiff. The relations between the plaintiff and his father-in-law, appear from the correspondence, to have been of an unusual kindly and affectionate character. No complaints whatever have been made against his character or conduct. Mr. Winans gave the plaintiff the share of the administrator's commission to which he was entitled. Mr. Latrobe evidently received him with

a hearty good will and a desire to aid him in every way, joining in the recommendation that he be made guardian though a foreigner, and suggesting in his letter of February 14th, 1908, to Mr. Winans, that he and Mr. Winans become sureties on the guardian's bond, if the plaintiff had any trouble in arranging this.

The bill is not filed to avoid a transaction from which the trustees or administrators receive any benefit. They had no personal ends to serve. Their duties as trustees were finished. They had nothing to do but turn over the property to the person entitled thereto. Their only personal interest was to get a good acquaintance. It was the children who were to be benefited.

It was not contended by the counsel for the plaintiff, that any intentional deceit was practiced nor that any material facts were concealed. The single complaint made by counsel was confined to the supposed fiduciary relations and to undue influences, to "pressure" and particularly to a failure to advise the plaintiff to obtain independent advise.

It is also contended by counsel that the trustees interfered to prevent the plaintiff from obtaining independent advice when he suggested it, and that the plaintiff was misled.

So far as Mr. Winans is concerned little need be said. He was an invalid and inactive. His references to Mr. Jacobus' opinion and the settlement of the estate were not of such a positive character as to be treated as undue influence, particularly in view of the decisions cited. He evidently did not wish to discuss the subject with his son-in-law.

Mr. Latrobe was more positive and used much stronger arguments and persuasions to induce the plaintiff to accept the distributions made. He did try to dissuade the plaintiff from employing independent counsel. This action, in connection with the fact, that the plaintiff is inexperienced in the American law, and the implicit confidence the plaintiff had placed in Mr. Winans and Mr. Latrobe, would have an important bearing on the subject of undue influence, had it not been that the plaintiff had already received independent advice. Mr. Duquaire, in whom he should have had the greatest

confidence, because he had been a solicitor, (avoue), of position, though retired from business when the conversation occurred, and had been a friend of long standing and the executor of his father had told him he was entitled to the whole estate, and that the opinion of Mr. Jacobus was erroneous.

Perhaps Mr. Duquaire's opinion was not so certain as to details, as the plaintiff afterwards received, but it was quite enough to lead a prudent man to be watchful, and to obtain competent advice. Mr. Jacobus says he also told him he ought to have his own counsel. Mr. Latrobe acted in perfect good faith. He had every reason to follow the advice of Mr. Jacobus, as has already been stated. Moreover, it should not be overlooked that if a fiduciary relation existed between the plaintiff and the trustees, and administrators, the same is true of the infants. The administrators technically represented them in all the transactions referred to.

While it is true the plaintiff is entirely inexperienced in law and business, except in the line of his profession, diplomacy, yet he was of sufficiently mature years, and of sufficient experience in life to understand the situation. The conversations referred to as influencing him were not of such a positive character as to deter a person of his intelligence and force from asserting his rights.

The transaction was a family settlement. I do not think the "pressure" or persuasions of Mr. Winans and Mr. Latrobe, and their relations to the plaintiff, were of such a character that a court of equity should, under the authorities cited, vacate the settlement.

The conclusions I have reached on this branch of the case are as follows: The case is unusual. It is apparent from the testimony of the plaintiff, from the correspondence between Mr. Winans and the plaintiff, and the testimony of Mr. Jacobus, the counsel of Mr. Winans in Paris, that the plaintiff has behaved throughout with the greatest delicacy and consideration for Mr. Winans.

If he had been at fault, from a business point of view, it has been in his neglect to ascertain and assert his rights in a practical and business like way. Mr. Jacobus says in his letter of December 6th, 1907: "The Prince is ready to sign whatever documents might be asked," in his letter of March 19th, 1908, says, "I want to write you personally that the whole attitude of the Prince de Bearn throughout has been admirable. In all his conversations with me he has clearly indicated that he wished to leave the conduct of everything to you and Mr. Latrobe, and whatever you decided would be right."

In his interviews with Mr. Winans and Mr. Latrobe he appears more anxious to have the money of his daughter settled in some way to protect her after her arrival at majority than to assert his own rights. He had the will in his possession at St. Petersburg. He was the executor and universal legatee. Instead of taking it to his own counsel and ascertaining his rights, and the procedure to be followed, which he might have done without criticism, he consults Mr. Winans and follows his wishes as suggested by his counsel. The plaintiff parts with the custody of the will, a document so valuable to him, and consents that it be sent to this country where he is a stranger. There is not only no attempt to take advantage of his position as executor and legatee but he takes no steps to ascertain and assert his rights.

There was no deceit, reserve, or attempt to take any advantage—he was perfectly straightforward in his testimony. Though the thought was in his mind, having been warned by Mr. Duquaire, that he was the rightful owner of the property and by Mr. Jacobus to consult his own attorney, he trusts everything implicitly to Mr. Winans and his advisers.

When the plaintiff suggested independent advice to Mr. Winans and Mr. Latrobe, he immediately abandoned the plan, not because of any sufficient "pressure," but from a desire to avoid distressing his invalid father-in-law. Mr. Winans says, when the matter of opening the distribution made was mentioned, the plaintiff said: "I would have to sue you, and that settles it."

Afterwards the plaintiff said: "I saw the Honorable Mr. Latrobe this morning, and we have decided that things would stay as they are now arranged as any change would be very difficult and offending to the administrators."

I believe that though he was influenced to some extent by Mr. Winans

and Mr. Latrobe, his actions were controlled more by his own disinclination to wound Mr. Winans and Mr. Latrobe, than by any "pressure," and that the settlement was in law his free and voluntary act. His information was uncertain. There were conflicting opinions by competent lawyers, and his rights were, in his opinion, doubtful. He was entirely ignorant of the laws and procedure of this country.

It was afterwards, when he had been positively and distinctly informed by counsel of his own selection that his right to the entire estate was certain, and that no grounds for controversy existed, that a mistake had been made, and the whole matter had been explained to him, that he then first fully realized the consequences of what he had done, that he had given up a large sum, undoubtedly his own, had put himself and his children in a position of being at an annual expense of $500, for the premium on his bond as guardian, that the difficulty of managing such an estate, looking after investments, collection of income, etc., for one in his profession, which took him to remote parts of the world—he had just been moved from St. Petersburg to China—might be great, that apprehensions again arose about the danger to his children, particularly his daughter, from receiving the entire control over such a large sum so early in life, apprehensions too often well-founded in such cases.

There is certainly no evidence in this case which warrants the inference that the plaintiff was influenced by unjust or mercenary motives or was seeking to obtain anything which was not, by the intention of the donor, the terms of the deed and the will of his wife, legally and properly, his own, as in fact it was.

It was then natural for him to feel, overlooking his past inattention to his rights, that his interests had been neglected by those in whom he trusted so implicitly, and that he should seek to undo what he had hastily and unadvisedly, perhaps, done in connection with the settlement of the estate. It was too late. Equity can give no relief in such a case as this. *Vigilantibus non dorimentibus leges subveniunt.*

It follows, from what has been said, the bill must be dismissed.